HOLMES *et al. v.* LANGSTON & WOODSON, and *vice versa.*

1. An obligation entered into by a defendant in a bail-trover action and two persons described therein as securities, in which it is agreed that defendant and such securities shall be bound for the eventual condemnation-money in the case, no amount being named as a penalty, conditioned that if the defendant should "deliver to the said plaintiffs, their agents or assigns, the notes described in their petition and the subject-matter of their suit, or produce the same to answer in the judgment that may be entered in the said case, or pay the eventual condemnation-money that may be awarded against him in the final trial of said case, or his sureties do so for him," is in substantial compliance with the requirements of section 4605 of the Civil Code.

2. Where the subject-matter of an action of bail-trover was promissory notes which had been pledged by the defendant as collateral security for a debt, due by him to the plaintiff and afterwards placed in the defendant's hands for collection, and the plaintiff had in a former suit recovered judgment on the debt thus secured, the measure of the plaintiff's damages was the amount due on the judgment rendered in the former suit, at the date of the trial of the trover action, provided the value of the collaterals equaled or exceeded that amount; and if such value was less than the amount due on the judgment, the measure of damages was the value of such collaterals ; and the defendant could not under such circumstances lessen the amount of the plaintiff's recovery by going behind the judgment rendered in the former suit and showing that it was for too large a sum.

3. The sureties on a bond given in an action of bail-trover of the character above referred to can not, after the plaintiff has announced his election to take a money verdict, free themselves from liability by tendering a portion of the property for the recovery of which the action was brought, offering to pay the money value of another portion which it is admitted has been converted by the defendant, and accounting for the balance claimed by plaintiff by setting up a state of facts which could have been pleaded by the defendant as a defense to the former suit of plaintiff.

4. If one after delivering promissory notes in pledge to secure a debt, has the notes intrusted to him by the pledgee for collection for the account of pledgee, makes an assignment for the benefit of his credi-

tors, and embraces therein as his absolute property such notes, disregarding the interest of the pledgee therein, and delivers the same to the assignee, or knowingly permits the assignee to take charge of and deal with them as assets for the payment of other creditors, such conduct, as against the rights of the pledgee, amounts to a conversion of the property, if at the time there remains any amount due the pledgee on the principal debt.

5. Property pledged to secure a debt evidenced by a promissory note may be resorted to for the purpose of enforcing payment of a draft upon a third person, given by the maker to the pledgee to be applied in discharge of the note, and which the drawee has failed to pay, when there was no express agreement that the draft should be taken in payment of the note.

6. If a " general agent " to collect money receives in payment property other than money, the creditor, so far as the debtor is concerned, is bound thereby; but this does not preclude the principal from refusing to accept the property from the agent or from holding him liable for the amount of the debt, if the reception of the property as money was in violation of instructions.

7. When the effect of a judgment by this court " is to leave the case to be again tried in the court below," questions raised in a cross-bill of exceptions filed by the defendant in error, relating to such matters as will probably arise at the next trial will be decided. In other cases the cross-bill will be dismissed.

Argued May 1,—Decided May 16, 1900.

Bail-trover.    Before Judge Reagan.    Monroe    superior court.    August 12, 1899.

*Stone & Williamson* and *Persons & Persons,* for Holmes et al.    *James S. Boynton* and *Cabaniss & Willingham,* contra.

COBB, J.    Langston & Woodson brought an action of bail-trover against J. O. Holmes, to recover certain promissory notes alleged to be the property of plaintiffs, averring that defendant had converted the same to his own use.    The defendant as principal and R. H. Holmes and C. J. Zellner as securities entered into an obligation, reciting that they were bound unto plaintiffs for the eventual condemnation-money in the case, the condition thereto reciting that the plaintiffs had brought an action of trover against the defendant to recover certain promissory notes, and that defendant had been served with the petition and bail-process, and concluding in these words: " Now, should the said J. O. Holmes deliver to the said plaintiffs, their agents or assigns, the notes described in their petition and the subject-mat-

ter of their suit, or produce the same to answer in the judgment that may be entered in the said case, or pay the eventual condemnation-money that may be awarded against him in the final trial of said case, or his sureties do so for him, then this bond to be void; else of full force and effect." The defendant answered, denying all of the material allegations of the petition, and setting up that the notes originally belonged to him; that they were deposited with plaintiffs as collateral security, and were delivered back to him for collection; that he was no longer liable on the principal debt to plaintiffs; and therefore, in dealing with the property as his own, he had not converted to his own use the property of plaintiffs. The case coming on for trial, after the parties had announced ready, the plaintiffs stated " to the court they would elect to take a money verdict for the securities sued for. " At this stage of the case the securities in the bail-bond appeared, and asked leave to file an intervention, which was, in substance, as follows: They had signed as securities what purported to be a bail-bond in this case, in which they undertook " to deliver to said plaintiffs, their agents or assigns, the notes described in said petition, and the subject of their suit," and now as such securities, before the trial of the case and pending the hearing of the same, in compliance with the terms of their undertaking, they in open court tender to plaintiffs all the notes described in the petition, except such as have been collected by their principal under the direction of plaintiffs and paid over to them, and in lieu of certain of the notes they tender $225 lawful money of the United States, collected in payment of the same since the filing of this suit and execution of the bond, and except certain notes to the amount of $612.50, which were collected, by defendant as trustee for plaintiffs, in cotton, which was destroyed by fire without fault on the part of defendant, thus causing the loss to fall on plaintiffs. The prayer was, that, if plaintiffs do not accept the tender, the court take charge of the notes tendered and pass an order discharging intervenors from liability on the bail-bond; and, if the facts alleged by the intervenors be contested by plaintiffs, that an issue be made up between plaintiffs and intervenors and submitted to a jury for determination. The court declined

to allow the securities to intervene in the case, and ordered their petition stricken.    To this ruling the securities excepted pendente lite.

The case has been twice tried, each time resulting in a verdict in favor of the plaintiffs.    At the last trial it appeared from the evidence introduced in behalf of the plaintiffs, that defendant had been engaged in selling fertilizers on commission for plaintiffs.    The agreement between the parties, which was in writing, was, in effect, that the defendant should give the plaintiffs his note for all fertilizers consigned to him, at a given rate per ton.    His commission was to be all realized in excess of that rate; and all notes taken by defendant for the purchase-price of fertilizers were to be turned over to plaintiffs as collateral security for the note of defendant, and were to be returned to the defendant in the fall for collection.    On April 15, 1893, defendant gave to plaintiffs a note for $1,379.18, which was due November 15, 1893; the consideration of the same being fertilizers consigned to him under the agreement above referred to.    There was also another note of defendant, the consideration of which was fertilizers consigned to him under the agreement, which was paid in part, and defendant in satisfaction of the balance due, on December 15, 1894, gave to plaintiffs a draft for $133.71 on O. G. Sparks Jr., payable on demand, which was duly presented, but never paid.    In accordance with the agreement, defendant sold the fertilizers, took the notes of the purchasers, and turned them over to plaintiffs. These notes were duly returned to the defendant for collection; and the present action is brought to recover certain of the notes which were deposited with plaintiffs as collateral security for the two notes of defendant above referred to.    On January 1, 1895, plaintiffs brought suit on the note for $1,379.18, and on August 29, 1895, recovered judgment against defendant for $585.53 principal and $106.88 interest, being the balance due on the note at that date.    On January 11, 1895, plaintiffs brought suit on the draft above referred to, and on August 29, 1895, recovered judgment against defendant for $133.71 principal and $8.60 interest.    On January 21, 1895, defendant made an assignment for the benefit of his creditors, and em-

braced therein as his property certain of the notes sued for in the present case.   In the list of creditors attached to the assignment appeared the names of plaintiffs, followed by the words, "by note, $585.73;" "by draft, $133.71."   The defendant has paid to the plaintiffs $56.42, which should be credited on the second judgment above referred to.   Nothing more has been paid on either judgment.   Before the present suit was brought a demand was made in behalf of plaintiffs for the notes sued for, and the defendant refused to deliver the same.   The notes sued for were worth more than the amount due plaintiffs on the two judgments.   From the evidence introduced in behalf of defendant it appeared, that various sums were paid by defendant to plaintiffs prior to the rendition of the two judgments, which it is claimed were not credited on the note and draft upon which the judgments were based.   Cotton of the value of $612.50 was, collected on some of the collateral · notes.   This cotton was held by defendant for the benefit of plaintiffs, and was, without fault on the part of defendant, destroyed by fire on September 28, 1893.   The balance of the notes were worth much less than the amount due on plaintiffs' judgments, not more than $325.   No demand was ever made on defendant for the notes before the present suit was brought. The jury returned a verdict in favor of the plaintiffs for $400. Plaintiffs filed a motion for a new trial upon numerous grounds, and the court granted a new trial upon three of the grounds therein contained, which was the second grant of a new trial in the case.   The case is here upon a bill of exceptions filed by the defendant and his securities, in which error is assigned by the former upon the decision of the judge granting a new trial, and by the latter upon their exceptions pendente lite hereinbefore referred to; and upon a cross bill of exceptions filed by the plaintiffs assigning error upon the refusal of the judge to base his decision granting a new trial on all the grounds of the motion, it being alleged that there was in each ground a sufficient reason for granting a new trial.

1. When the plaintiff in an action of trover requires bail and has made the affidavit prescribed by law, it is the duty of the officer serving the process "to take a recognizance payable to the

plaintiff or complainant, with good security, in double the amount sworn to, for the forthcoming of such personal property to answer such judgment, execution, or decree as may be rendered or issued in the case, and such security shall be bound for the payment of the eventual condemnation-money, for which judgment may be signed up against the defendant and said security, and execution had thereon without further proceeding." Civil Code, § 4605. The obligation entered into by the plaintiff and his securities in the present case, while not literally conforming to the terms of the section quoted, was in substantial compliance therewith. There was no penalty stated in the bond, but the parties thereto expressly bound themselves to pay to the plaintiffs "the eventual condemnation-money." When the defendant has entered "into bond with good security for the eventual condemnation-money," the sheriff is authorized to release him from custody. Civil Code, § 4606. The provision requiring the penalty in the bond to be twice the amount sworn to is merely directory, and the failure to insert such a penalty will neither vitiate the bond nor prevent the same from being treated as a statutory bond, when it clearly appears from the terms of the obligation that it was the intention of the obligors to bind themselves to pay the eventual condemnation-money in the case. But it is contended that the condition in the bond is essentially different from the condition required by the statute; that the undertaking of the obligors was "to deliver to the said plaintiffs, their agents or assigns, the notes described in their petition, and the subject-matter of their suit, or produce the same to answer in the judgment that may be entered in the said case, or pay the eventual condemnation-money;" and that, such a condition not being in the statute, the obligation is a mere voluntary undertaking and not a statutory bond. The language of the bond is peculiar and unusual. The statute requires a bond "for the forthcoming" of the property "to answer such judgment, execution, or decree as may be rendered or issued in the case;" and then declares that the securities in such a bond "shall be bound for the payment of the eventual condemnation-money." The language of the bond clearly indicates that the obligors intended to enter into an undertaking to have the prop-

erty forthcoming to answer whatever judgment was rendered in the case, and to pay the eventual condemnation-money if required. This was all that the statute required. The bond was, in effect, a statutory bond, and there was no error in so holding.

2. The plaintiff in an action of trover may, at the trial of the case, say whether he will accept an alternative verdict for the property or its value, or demand a verdict for damages alone, or for the property alone, with its hire, if any, and the court is required to instruct the jury to render their verdict in such form as the plaintiff elects. Civil Code, § 5335. When the plaintiff elects to demand a verdict for damages alone, and the proof shows a conversion, and that the plaintiff was at the date of the conversion the absolute owner of the property, the measure of damages shall be, at the option of plaintiff, either the highest proved value of the article between the date of the conversion and the time of trial, or the value of the article at the date of the conversion, with interest. Civil Code, § 3917; *Barnett* v. *Thompson,* 37 *Ga.* 335, 339; *Central R. Co.* v. *Atlantic R. Co.,* 50 *Ga.* 444; *Fuller* v. *Carter,* 59 *Ga.* 395; *Jaques* v. *Stewart,* 82 *Ga.* 82. If, however, the proof shows that the interest of the plaintiff in the property is less than that of absolute ownership, the measure of damages will be the value of plaintiff's interest therein, whatever it may be. *Russell* v. *Kearney,* 27 *Ga.* 96 (4); *Bigelow* v. *Young,* 30 *Ga.* 121 (5); *Horne* v. *Guiser Mfg. Co.,* 74 *Ga.* 791; *Bradley* v. *Burkett,* 82 *Ga.* 255. It follows, therefore, that when the article converted is property pledged to secure a debt and the person guilty of the conversion is the pledgor, the measure of damages will be the value of the pledge, provided that such value is a sum less than the debt secured; and if the pledge be of equal or greater value than the debt, the measure of damages will be the amount due on the debt at the time of trial; and if the debt has been discharged in full pending the action, the measure of damages will be such a sum as nominal damages as will be sufficient to carry the costs. See, in this connection, Colebrooke, Col. Sec. § 12. When, as in a case like the present, the property alleged to have been converted consists of promissory notes pledged as collateral to secure notes of the pledgor, the amount of the liability of the

pledgor on the principal debt becomes a material question. The amount of this liability may be established in different ways, by parol if there is no other or better evidence, by a writing if there is written evidence, or by a record if the debt is evidenced by a judgment of a court of competent jurisdiction. Whatever character of evidence is relied on is subject to be met only by such evidence as will in other cases be allowed to overcome the evidence introduced. If a judgment is relied on to establish the amount of liability, the defendant will not be allowed to go behind the judgment and show that the amount thereof, although apparently due, was in reality not due. "An adjudication of the same subject-matter in issue in a former suit between the same parties, by a court of competent jurisdiction, should be an end of litigation." Civil Code, § 3741. "A judgment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered." Civil Code, § 3742. See also Civil Code, §§ 5233, 5348. Applying these rules to the present case, the judgments rendered in the former suits of plaintiffs against defendant conclusively determined the amount of the debt due by defendant to plaintiffs at the dates of such judgments. The defendant, therefore, so far as the amount of his debt to plaintiffs is concerned, was precluded from pleading or proving any matter which was or could have been placed in issue in the former suits. The answer, to the extent that it set up such matter as a defense, should have been stricken, and the evidence admitted to sustain that part of the answer should have been ruled out. Upon another trial the jury should be instructed that, if they find that there has been a conversion, they must ascertain the value of the property converted, and if such value is equal to or more than the amount due at the date of the trial on the judgments of plaintiffs against defendant, they should return a verdict in favor of plaintiffs for the amount due on the judgments; that if, on the other hand, the value of the property converted is less than the amount due on the judgments at the date of the trial, the verdict in favor of plaintiffs should be for the value of the property converted.

3. The relation of the securities on a bail-bond in an action of trover to the suit is peculiar. They are bound by the judgment against their principal, but they do not become parties to the case until judgment is entered. If there is any law authorizing such securities to be heard in the case, we are not aware of its existence. Their liability is absolutely fixed by the judgment against their principal, and they must stand or fall by the result of his defense, such being the express undertaking in the bond. If judgment has been rendered against him by a court of competent jurisdiction, they are absolutely bound by it, and will not be heard to impeach or attack it in any way for causes which were or could have been matter of defense by their principal. See *Jackson* v. *Guilmartin,* 61 *Ga.* 544. After becoming securities on the bond they must remain silent witnesses to the conflict between the parties to the suit, standing ready to fulfil at the end of the litigation the obligation they have undertaken — to pay the judgment if the plaintiff elects to recover a money verdict, or deliver the property or pay damages in lieu thereof if an alternative verdict is rendered. The securities have no right to tender to the plaintiff the property sued for, at any time pending the suit; and especially would no such right exist at the trial when the plaintiff had in due time elected to take a verdict for damages in lieu of a finding for the property. The right of the defendant to make such tender expires at the first term, and does not exist at all if there has been a previous demand and refusal. Civil Code, § 3897. The securities in the present case sought to discharge themselves from liability by doing three things: first, delivering to plaintiffs such of the property as was still under the control of the defendant; second, paying for a portion of the same which it was admitted had been by the defendant converted to his own use; and third, by accounting for the balance claimed by plaintiffs, by showing a state of facts which could have been pleaded by the defendant in the former suits of plaintiffs. Even if the securities could be heard at all, they could not set up any matter other than such as would be available to the defendant as a defense. As has been seen, the defendant could not go behind the judgments rendered in the former suits, and after an election by the plaintiffs to

take a money verdict, the defendant could not defeat such election by tendering at the trial the property sued for, either in whole or in part. While the securities were not parties to the former suits, the defendant was. Neither are the securities parties to the present case. If the plaintiffs recover, they become parties to the judgment, but if the plaintiffs fail to recover they never become parties even to the judgment in the case. The fact that a bail-bond with securities was given does not make the present case and the former suits controversies between different parties. There was no error in striking the intervention filed by the securities on the bail-bond.

4. If the defendant knowingly embraced in an assignment made for the benefit of his creditors any of the notes which were intrusted to him for collection by the plaintiffs, thereby intending that the same should be treated as his absolute property to the exclusion of any interest of the plaintiffs in such notes, and delivered the notes to the assignee for that purpose, or knowingly permitted the assignee to take possession of the notes, collect the same, and apply the proceeds to other purposes than those for which they were intrusted to the defendant, such conduct would amount to a conversion of such of the notes as were embraced in the assignment, if at the time there was anything due by the defendant to plaintiffs on the debt the notes were pledged to secure. "The action of trover being founded on a conjunct right of property and possession, any act of the defendant which negatives, or is inconsistent with, such right, amounts, in law, to a conversion." *Liptrot v. Holmes*, 1 *Ga.* 381. See also *Phillips* v. *Taber*, 83 *Ga.* 565.

5. If at another trial it should appear that the parties agreed when the draft on Sparks was taken that the same should be in discharge of all liability on the note and that plaintiffs would thereafter look to the draft alone, then all liability on the note would cease, and the notes deposited to secure the same would not be liable to the payment of the draft. If, on the other hand, there was no express agreement that the draft should be treated as a payment of the note, the debt represented by the note would not be discharged until the draft was paid. Civil Code, § 3720. As long as the debt represented by the note was unpaid, prop-

erty pledged to secure payment of the same could be resorted to for that purpose; and it would be immaterial whether the suit to enforce liability was brought upon the notes or upon the draft.

6. If defendant was the general agent of the plaintiffs to collect the notes delivered to him, the receipt by him of property as money would, so far as the debtors were concerned, bind the creditors. Civil Code, § 3717. But if such conduct was in violation of instructions, the plaintiffs could, as against the defendant, refuse to accept the property and require him to pay the amount due in money. It was therefore error to refuse to allow the plaintiffs to prove that defendant had no authority to receive cotton in payment of notes payable in money, to admit evidence that such payments were made, and to charge, in effect, that such payments bound the plaintiffs as against the defendant.

7. The court did right in granting a new trial upon the grounds stated in the order; but as there were other grounds relating to matters which will arise at the next trial, and which would, under the view we have taken of the case, have required the granting of a new trial, the judgment on the cross-bill of exceptions must be reversed. Civil Code, § 5527.

*Judgment on main bill of exceptions affirmed; on cross-bill reversed. All the Justices concurring, except Fish, J., absent.*