## 1528. THOMPSON *v.* CARTER.

1. A point made in the bill of exceptions and abandoned in the brief of counsel for the plaintiff in error will not be considered.
2. In making exceptions to rulings on evidence, the complaining party must plainly point out the alleged errors; and where the admission of testimony is excepted to in bulk and it appears that a material portion of the testimony excepted to is admissible, this court will not look further ·to see if the remainder of the testimony was inadmissible. The complaining party must winnow the chaff from the wheat.
3. The maker of a promissory note, delivered on condition precedent to the payee, ·may recover the note in trover from the payee, where there has been a breach of condition by the latter.
(a) The fact that the payee, in violation of the condition, has transferred the note to an innocent holder for value does not defeat the maker's cause of action. The unauthorized transfer, being a conversion, can not be a defense to a suit in trover.
4. In an action of trover, where the plaintiff elects to take a money verdict, he may recover the highest proved value of the property between the time of the conversion and the time of trial.

Trover, from city court of Dublin—Judge Burch. October 13, 1908.

Submitted January 26,—Decided July 31, 1909.

*H. P. Howard, Ira S. Chappell,* for plaintiff in error.

*W. C. Davis,* contra.

RUSSELL, J. Carter brought an action of trover against Thompson to recover a promissory note for $290, signed by the plaintiff and made payable to the defendant. The plaintiff elected to take a money verdict, and the jury found a verdict in his favor for an amount slightly smaller than the face of the note with interest. Assuming the evidence in behalf of the plaintiff to be true, he made out the following state of facts: Thompson was the owner of a certain horse, which was lame, and, pending negotiations for the purchase of the horse by Carter, the parties agreed upon a price which was satisfactory to both of them provided the horse was cured of lameness. Thompson, who was a veterinary surgeon, stated that he could cure the horse, and would keep him in his possession and treat him until cured. Carter then signed the note and handed it over to Thompson, to be held by him in escrow

until the cure and delivery of the horse. It was expressly understood that the note was not to become the property of Thompson as a note until the horse should be turned over to Carter, cured of its lameness, and that if the horse was not so cured, Carter should return the horse and Thompson the note. In other words, Thompson was a mere bailee or custodian of the note, which was to remain the property of Carter until the happening of the contingency above mentioned. The·trade was not to be complete or the note binding as a legal obligation until the horse had been cured of its lameness by Thompson. After the horse had been treated for some time by Thompson, and during Carter's absence from home, Thompson sent the horse to Carter's house and left it there. Carter at the time was at Adrian, about ten miles from home, and Thompson went to Adrian and informed Carter that he had left the horse at his home and that it had been cured; that while it was a little sore from a long drive, it would be all right in a few days. At Thompson's request, Carter thereupon went before an officer at Adrian and acknowledged his signature to the note. When Carter returned home he found that the horse had not been cured, and, after keeping it for a few days, he returned it to Thompson and demanded back his note. Thompson refused to return the note or to retake the horse. It seems that Thompson had in the meantime hypothecated the note· by indorsement at a bank, and, after the commencement of the present suit, the bank as an innocent purchaser for value obtained a judgment against Carter as maker and Thompson as indorser, and, by virtue of the fi. fa. issued thereon, the horse was sold for $90. It was admitted that Carter made demand for the note before the institution of the suit by the bank on the note. The record is not clear whether at the time Carter tendered back the horse Thompson had the note in his possession or had transferred it to the bank, but it is clear that the note was transferred to the bank before maturity.

1, 2. The point that the note, having been merged into a judgment, could not be recovered in this case is expressly abandoned by the plaintiff in error. The exceptions to rulings on testimony are not properly presented, for the reason that the testimony is excepted to in bulk and a portion of it is clearly admissible. The plaintiff in error failed to winnow the chaff from the wheat, and we can not undertake to do so for him.

3, 4. This leaves the only remaining exception, that the verdict is contrary to law and without evidence to support it. It is essential to a recovery in an action of trover that the plaintiff should establish (1) title or right of possession to the property in dispute; (2) conversion by the defendant, and (3) the value of the property. It is contended that Carter failed in all three of these particulars. The evidence shows that the note had never been unconditionally delivered to the payee. It is true that the note was put into the payee's hands, to take effect as a note upon the happening of a contingency in the future. The case was not different from what it would have been if the note had been delivered to a third person with instructions that if he knew the horse had been cured, the note should be delivered to Thompson. Nothing is better settled than that the mere handing over of a note to the payee upon the express condition that it is not to be binding until the happening of a named contingency may be shown by parol evidence. A contract is not created until the condition is complied with. *Heitmann* v. *Commercial Bank,* ante, 584 (65 S. E. 590) ; *Burke* v. Dulaney, 153 U. S. 228 (14 Sup. Ct. 816, 38 L. ed. 698). We think, therefore, that the plaintiff's evidence establishes that Carter had title to the note in question, and that as between him and Thompson he was still the owner thereof, and had such a right of possession that he could maintain trover for it. As to the second point, the evidence is undisputed that Thompson had converted the note by hypothecating it to the bank, when it had been delivered to him merely as a bailee or in escrow. "Trover may be maintained when one has in his possession the personal goods of another, or has sold them, or used them without the consent of the owner, and refuses to deliver them when demanded." *Savage* v *Smythe,* 48 *Ga.* 564. And trover will lie for the recovery of a promissory note. *Seago* v. *Pomeroy,* 46 *Ga.* 227; *Holmes* v. *Langston,* 110 *Ga.* 861 (36 S. E. 251) ; 7 Lawson's Rights, Remedies & Practice, 5676. Demand and refusal to deliver is evidentiary upon the point of conversion, but demand and refusal to deliver need not be proved where the evidence clearly establishes a conversion. *Braswell* v. *McDaniel,* 74 *Ga.* 320, 323; *Liptrot* v. *Holmes,* 1 *Ga.* 381; *Robinson* v. *McDonald,* 2 *Ga.* 116. So far as the parties to this case are concerned, it is no defense that Thompson had negotiated the note to the bank. As argued

by counsel for the defendant in error, it would be absurd to say that conversion is a good defense to a suit in trover. Negotiation of the note to the bank was conversion; and conversion is the very gist of the plaintiff's case in trover. The third point is as to the value of the note. The face of the note was $290; the verdict was for $274 and interest. The horse had been sold on a fi. fa., issued on the judgment, which the bank had obtained against Carter and Thompson, for $290, and, after the payment of court costs, it is probable that the fi. fa. had been credited with the difference between $290 and $274. It would seem, therefore, that the verdict is a correct measure of the damage which Carter has suffered. It was held by the Supreme Court in the case of *Rushin* v. *Tharpe,* 88 *Ga.* 779 (15 S. E. 830), that "the owner of a promissory note of which another fraudulently obtains possession, and which he ·converts to his own use by suing it to judgment and collecting the amount due thereon, may, in an action of trover, recover from the latter the value of the note, notwithstanding such suit and judgment and the collection thereof, and notwithstanding the plaintiff had knowledge of these facts before bringing suit." Thompson having disposed of the note to an innocent third party for value, without Carter's authority, and by this act placed it beyond Carter's power to recover possession of the note, and having put it within the power of the bank to assert liability against him to the amount of the value of the note, Carter ought, in justice, to recover the value of the note to him. It may be said that the note while in Thompson's possession was a mere piece of paper—an incomplete contract, without value, and that only articles of value can be the subject-matter of trover. Any change in the nature of property is a conversion; and in an action of trover, where the plaintiff elects to take a money verdict, the value of the converted property at the time of the conversion, or at some period between the conversion and the trial, is the correct measure of damages. In *Walton* v. *Henderson,* 4 *Ga. App.* 173 (61 S. E. 28), it is held: "In ·estimating· the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he can prove between the time of the conversion and the trial." After the conversion of the note by its indorsement to the bank, its value was fixed; and it was properly determined by the jury.          *Judgment affirmed.*