No. 15.—The Justices of the Inferior Court of the county of Morgan as a Court of Ordinary for the use of WILSON WOODS, plaintiff in error, *vs.* WILLIAM WOODS and JOHN VASON, defendants in error.

The Court of Ordinary has no power to discharge a security to a guardian's bond, from a liability which the guardian has already incurred.

In a suit against the discharged security on the guardian's bond, the plaintiff must prove *affirmatively* some *default* or act of *malfeasance* on the part of the guardian, *prior to the discharge of the security*, which in law would constitute a *breach of the bond*. Evidence of the *bare reception* by the guardian of his ward's estate, and nothing more, is insufficient to charge such security.

The discharged security of a guardian is only released from the *future*, not from the *past*, liabilities of his principal. The substituted security is liable, both for the *past* and *future*.

In this action the security pleaded and proved his discharge by the Court of Ordinary. It was therefore incumbent on the plaintiffs to *reply by proof*, some *default* or *malfeasance* on the part of the guardian amounting to a *breach* of the bond; for, although the Judiciary Act of Georgia, of 1799, abolishes special pleading—provides that the declaration and answer shall be sufficient to carry a case to the jury, without any replication or other course of proceedings—yet it does not dispense with the proof required by law on the trial.

This was an action of debt on a guardian's bond, tried before Judge Merriwether, in the Superior Court of the county of Morgan, at March Term, 1846.

On the 5th of December, 1835, the defendant in error, William Woods, was appointed guardian of Wilson Woods and Augustus Woods, orphans of James Woods, deceased, and gave bond with one John Woods and the defendant, John Vason, as his securities. On the 25th of November, 1839, he gave new bond, with John Woods and James Barfield as his securities, as guardian for Wilson Woods, (for whose use the above action was brought on the first bond,) conditioned that he should do and perform all the duties of guardian for the person and property of the said Wilson Woods as the law required, &c.; and was qualified anew in the Court of Ordinary. It appears that the following order was then granted by the Court of Ordinary (to wit) on the 25th of November, 1839:

" On application, William Woods gave new bond and approved security, as guardian of Wilson Woods, and it is ordered that John Vason be discharged from all further liability as security on the bond of William Woods as guardian of Wilson Woods and Augustus Woods."

William Woods, the guardian, and his securities on the second bond, become insolvent; John Woods died insolvent, and there being no representative to him, the suit was brought against the defendants in error, alleging a general breach of the conditions of the bond.

The defendant pleaded, specially, the giving of the new bond on the 25th of November, 1839, and the discharge of Vason by the Court of Ordinary from further liability as security on the first bond, (the subject of the suit,) in bar of the plaintiff's action.

The trial proceeded, and the counsel for plaintiffs after introducing the bond, and an exemplification from the Court of Ordinary, exhibiting a

return made by William Woods, as guardian of Augustus Woods and Wilson Woods, acknowledging the receipt by him of $2,795 12 on the 25th of December, 1837, closed their case.

The defendants in error then tendered in evidence, in support of their defence, the new bond, and the records of the Court of Ordinary aforesaid of the discharge of the defendant Vason. To all which the plaintiff's counsel demurred, on the ground that the evidence tendered furnished no legal bar to the plaintiff's right to recover; whereupon the court below overruled the demurrer and admitted the evidence, deciding that the same was a bar to the plaintiff's right to recover, for the following reasons:

1st. Because the records of the Court of Ordinary, when taken together, did not show that Woods' guardian had ever been removed by the court, either on his own application, or that of his securities.

2d. That a fair interpretation of the record showed that new securities only had been given.

3d. That by the execution of the new bond by the securities, and the acceptance of it by the Court of Ordinary, the securities on the former bond were discharged, and the latter securities were alone liable.

To which decision in the court below, and the reasons given therefor, the plaintiffs in error excepted, and have assigned for error,

1st. The court below erred in permitting the exemplification of the record from the Court of Ordinary, offered in evidence by the defendants, to go to the jury, because the same contained no evidence, that the defendant Vason was ever legally discharged from his liability on said bond, on which the action was brought, inasmuch as no petition was ever exhibited to said Court of Ordinary, and no citation ever issued in terms of the law, previous to the passing of said order, discharging the defendant Vason from further liability.

2d. Admitting that the order of the Court of Ordinary, and the giving of the new bond, did discharge the defendant Vason from further or future liability, the court below erred in deciding that it discharged him from his liability for funds, that the defendant Woods, had received as guardian, previous to the passing of said order, and previous to the execution of the second bond.

3d. The court below erred in deciding that by the execution of the new bond by the defendant Woods and his securities, and the acceptance of it by the Court of Ordinary, the securities to the first bond were discharged from all liability whatever; and that the securities on the last bond were alone liable for the acts of the defendant Woods, from the commencement of the guardianship:—

4th. The court below erred in deciding that the order of the Court of Ordinary, discharging the defendant, Vason, from further liability, discharged him from any liability at all, either past or future.

5th. The court below erred in deciding that it was within the power of the Court of Ordinary to discharge the defendant, Vason, from liabilities he had incurred as security for Woods as guardian, previous to the passing of said order of discharge.

F. H. Cone, for plaintiff in error.

The discharge of Vason, it is presumed, took place under the provisions of the acts

of the Legislature, although there is no evidence that any petition was made, or citation issued.—*Prin. Dig.* 228, 232, 237, 241, 245; *Hotchkiss,* 471.  It does not appear from the records of the Court of Ordinary under what provisions of these statutes the new bond was taken.

The plaintiffs in error contend, that the taking of the new bond did not discharge the securities to the first bond, for any moneys then in the guardian's hands.—*Shelton* vs. *Cureton,* 3 *McCord's Rep.* 417; *Trimmier* vs. *Trail,* 2 *Bailey's Rep.* 480; *Waterman* vs. *Bigham and Hudson,* 2 *Hill's Law Rep.* 512; 1 *Bailey,* 334; *Field* vs. *Pelot,* 1 *McMullan's Rep. in Equity,* 370–1; *Richards. Law Rep.* 507; 6 *Randolph Rep.* 444; 1 *Brockenbrough Rep.* 256; 9 *Wheaton,* 720; 12 *ib.* 505.

The Legislature could not authorize the court to discharge the securities from a liability already incurred.  It would impair the obligation of a contract.—4 *Wheaton,* 518; 6 *ib.* 131; 3 *Mason C. C. Rep.* 88.

DAWSON, REESE, and FOSTER, for defendants in error.

*By the Court*—WARNER, Judge.

This action was instituted on a guardian's bond, executed by William Woods as principal, and John Vason as security, containing the following condition: "Whereas, the said William Woods is this day appointed ·guardian of Wilson Woods and Augustus Woods, orphans of James Woods, deceased : now if the said William Woods do well and truly perform and demean himself as guardian as aforesaid agreeably to letters of guardianship bearing even date herewith and agreeable to law in such cases made and provided, then this obligation to be void, otherwise to remain in full force and virtue in law."

This action is brought for the use of Wilson Woods alone—the questions involved in this case are important, not only to the defendant, but to the community at large ; and we have given them that consideration, which their importance would seem to demand.  The guardian's bond to which Vason became security, was executed on the 5th of December, 1835.  On the 25th of December, 1837, William Woods, the guardian, charges himself in his return to the Court of Ordinary, with the reception of money belonging to his wards, to the amount of 2,795 12.  On the 25th November, 1839, John Vason was discharged from his securityship on the first bond, and a new bond given, with John Woods and James Barfield, securities.  It also appears from the record in this case, that William Woods, the guardian, and his securities on the second bond, are *insolvent.* The first ground of error assigned by the plaintiff, as to the fact of there being no petition, and citation to the Court of Ordinary, for the discharge of Vason, the security, prior to the granting the order of discharge, was virtually abandoned by the plaintiff's counsel in the argument, and, we think, properly abandoned ; therefore, it is not necessary for us now to consider it.  The rights and liabilities of the respective parties, growing out of the discharge of Vason, the security, by the Court of Ordinary, is the great question in this case, and one which we are free to admit is not altogether clear of difficulty.

Anxious, however, to establish a rule of decision for our future guidance in all similar cases, we have carefully examined the general principles of the common law, as well as the decisions of the courts in a sister State, where there is a statute, similar to our own, providing for the discharge of securities to administrator's and guardian's bonds.

The Act of 1805 (*Prin. Dig.* 237) provides, "Whenever securities for executors, administrators, or guardians, conceive themselves in danger of suffering thereby, and petition the Court of Ordinary for relief, the said court shall cause the executor, administrator, or guardian, to be summoned to appear before them at the next sitting thereof, and shall make such order, and give such relief in the case, by counter security or otherwise, as, to the said court, *shall seem just and equitable*. The clause of the Act, under which the Ordinary in South Carolina exercises the power of discharging securities as stated by the court, in *Trimmier* vs. *Trail*, 2 *Bailey's Rep.* 486, is as follows:—"If the securities for administrators conceive themselves in danger of being injured by such suretyship, they may petition the court to whom they stand bound, for relief; which court shall summon the administrator to appear, and thereupon make such order or decree as shall be sufficient to give relief to the petitioner." On the argument of this case, it was insisted by the counsel for the defendant in error, that the discharge by the Court of Ordinary, and the substitution of new securities to the guardian's bond, released Vason, the discharged security, from all liability whatever, both *past* and future. The order granted by the Court of Ordinary, only discharges Vason from *further* liability as security on the guardian's bond: "It is ordered by the court, that John Vason be discharged from all *further* liability as security on the bond of Wm. Woods, as guardian of Wilson Woods and Augustus Woods." The security, Vason, is liable on his *contract*, the terms of which are stipulated in the bond executed by him. If Woods, the guardian, "do well and truly perform and demean himself as guardian, agreeable to law, in such cases made and provided, then this obligation to be void, otherwise to remain in full force,"—constitutes the *liability* and extent of Vason's undertaking. But suppose the guardian does not perform his duties according to law, fails to collect the effects of his ward, whereby they are lost; or having collected them, wastes the same during the time of the first security, would not the security be liable therefor, according to the terms of his bond? Would not the ward, for whose use and protection the bond was taken, have a *vested right*, under the contract, to recover on it, for any damages sustained by him, for a breach thereof by the guardian, *prior* to the discharge of the security? Has the Court of Ordinary the power, under the Constitution, or would the Legislature have the power to release the security from a liability already incurred, by a breach of the contract, without manifestly *impairing the obligation of such contract*? We think not, and in this view of the question we are sustained by authority. In the case of *Cureton* vs. *Shelton*, (3d Mc Cord's *Rep.* 417,) the court, after reciting the fact, that a decree had been made against the administrator establishing his default, *prior* to the discharge of the security, remark,—"*These were all liabilities which attached, at the time of the discharge. Now admitting that the discharge could operate as to future liabilities, it cannot affect those which did exist; there is no power which could release the securities from such.*"

In *Trimmier* vs. *Trail*, (2 *Bailey's Rep.* 486,) the court say—"The act under which the Ordinary is to give relief to the securities, clearly contemplates a discharge from a *future* and not from a *past* liability." This last case fully sustains the decision of the court in *Cureton* vs. *Shelton*. We are therefore of the opinion, the court below committed error

in deciding the discharge of Vason by the Court of Ordinary, and the substitution of new securities to the guardian's bond, discharged him from all liability, both *past* and future; his discharge could only operate as to future liabilities.—See *Ordinary* vs. *Bigham and Hudson*, 2d *Hill's S. C. Rep.* 512. We are also of the opinion, the *substituted* securities on a guardian's bond are bound for all the liabilities of the guardian, both past and future. In such a case the security would be considerd as *cumulative*. *Trimmier* vs. *Trail*, 2 *Bailey's Rep.* 486; *Ordinary* vs. *Bigham and Hudson*, 2d *Hill's S. C. Rep.* 512.

It was insisted on the argument by the counsel for plaintiff in error, notwithstanding Vason the security was discharged by the Court of Ordinary, the reception by the guardian of the sum of $2,795 12, (the money of his ward,) *anterior* to his discharge, was sufficient evidence to authorize a recovery against the discharged security: it having been proved on the trial, the guardian and his second securities were *insolvent*. It was said, the return by the guardian to the Court of Ordinary of that amount of money in his hands, and allowed by the judgment of that court, was equivalent to a decree he was indebted that amount to his wards. Although we hold the Court of Ordinary could not discharge the security from a *past* liability, yet, we are clearly of the opinion, it is incumbent on the plaintiff to show *affirmatively* such liability had been incurred by the guardian, prior to the discharge of the security, when he seeks to make such security liable on his bond. The burden of proof is on the plaintiff, to show waste or some act of maladministration on the part of the guardian *anterior* to the discharge of the security, in order to make the latter liable in law. The bare reception of the money by the guardian, prior to the discharge of the security, is not evidence of either waste or maladministration by the guardian.

The law makes it the duty of the guardian, to reduce into his possession the money and effects of his ward, and control the same until he arrives of age. Indeed, it would be a *breach* of his bond, if the guardian should fail to use lawful diligence to acquire the possession of his ward's effects, after his appointment; and surely, the doing of that which the law enjoins upon him as a duty, cannot be considered as a *breach* of his obligation, given to secure the performance of such duty. The view we have taken of this subject is supported both by principle and authority. " It is presumed, till the contrary is proven, that every man obeys the mandates of the law, and performs all his *official* and social duties." —1 *Greenleaf's Ev.*, 47; *Bank U. S.* vs. *Dandridge*, 12 *Wheat. Rep.*, 69, 70. The security is only liable, on his contract, for some *default* of the guardian, while he is such security. The legal presumption is, the guardian managed the money and effects of his ward properly—that he obeyed " *the mandates of the law and performed all his official duties, till the contrary is proved*," *up to the time of the discharge of the security*. Besides it is a rule of evidence, that the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue. —*Greenleaf's Ev.*, 1st *vol.*, 89. " Where *nonfeasance* or *negligence* is alleged, in an action on contract, the burden of proof is on the party making the allegation, notwithstanding *its* negative character."—1st *Greenleaf's Ev.*, 96, and cases there cited.

To the plaintiff's action on the bond, the defendant pleads he was

discharged by the Court of Ordinary, on the 25th November, 1839. By the common law rule of pleading, the plaintiff would have replied, in order to avoid the effect of the defendant's plea, some *default* or act of waste on the part of the guardian *prior* to the discharge of the defendant. The plea of the defendant makes the *time* of the default material.— *Gould's Plead.*, 92, 93, 94. Although our Judiciary Act of 1799 dispenses with the replication on the part of the plaintiff, yet it does not dispense with the *proof* required by law on the trial. Would a replication on the part of the plaintiff, alleging the reception of the money by the guardian, prior to the discharge of the security, and the insolvency of the guardian at the time of the trial, be a sufficient answer to the defendant's plea of discharge to entitle him to judgment under the law ? We think not, for the reason it does not allege any *default* or other act of *malfeasance* on the part of the guardian, *prior to the discharge of the security*, which in law would constitute a *breach* of the bond. In Trimmier *vs.* Trail, the suit was against the security of an administrator's bond who had been discharged by the Ordinary.

To the defendant's plea of discharge, the plaintiff replied, a purchase by the administrator at his own sale, and a decree by the Ordinary therefor. In giving judgment on a demurrer to the replication, the court say— " To be an answer to the plea, the replication ought to have shown a *liability existing* in the administrators and their sureties, *before the order of discharge was made by the Ordinary.*" So here the plaintiff should have proved, on the trial, some *liability existing*, or incurred by the guardian, *before the order of discharge was made by the Court of Ordinary*, to render the security liable on his contract.

We are of the opinion the plaintiff should allege specially, in his declaration, *the particular acts* of the guardian, which he insists to be a breach of the bond ; and if he seeks to make a discharged security liable, he must prove, on the trial, such acts of malfeasance on the part of the guardian, as in judgment of law will make him liable, *before the date of the security's discharge.* According to the rule laid down in Trimmier *vs.* Trail, a general decree against an administrator, or guardian, made *after* the discharge of the security, establishing a *general default* on his part, would not be sufficient to make the discharged security liable. In order to make the discharged security liable, the decree must purport to charge the administrator or guardian with some act of maladministration *before* his discharge. In Trimmier *vs.* Trail the court say—" In this case it does not appear that the decree was founded on a liability which had attached, previous to the discharge, and if we understand the facts correctly, as they came out on the trial of the issue submitted to the jury, none had in truth attached. The defendant, therefore, cannot be made liable to pay a decree made in 1818—nearly two years after his discharge—which does not purport to charge the administrator for any act of maladministration *before* his discharge." It is true, the facts in the case of Trimmier *vs.* Trail were not such as to render the administrator liable for any *default ;* but the particular facts of that case do not in the least impair the *legal principles* advanced and established by the court.

In Vaughan *vs.* Evans, 1st *Hills Ch. Rep.* 414, the liability of securities appears to have been well considered. From the facts reported, it appears that Evans was appointed a commissioner in equity, and gave

bond with security.    At the expiration of his term of office, he was reappointed, and gave new bond with security.    During his second term of office, it was ascertained he was a defaulter for the sum of $32,935 98.    The contest arose between the two sets of securities; the securities to the last bond contending, the securities to the first bond were liable for *all moneys* received by Evans in his official capacity, during his first term of office, and not paid over to the parties entitled thereto.    It was contended in behalf of the last set of securities, that the securities to the first bond were liable for all moneys received by Evans, during his first term of office, that it was the receipt of the moneys, and not the *neglect*, or *refusal to pay over*, which fixed the liability of the first securities, and that on a demand made, and refusal to pay over, during his *second term*, the default will have relation back to the time when the money was received, and render the first securities liable therefor.    It appears a large portion of the money for which Evans was in default, was received by him during his *first* official term, and, in some instances, had been ordered by the court to be invested or paid out.    The Chancellor before whom the case was tried, held the commissioner Evans was not guilty of any default during his first term, for which his securities of that term were liable, on account of the *bare reception of the money*— unless, he says, " it was misconduct to perform his duty, by receiving it, and holding it *until demanded.*"    The Chancellor takes up the cases in which Evans had received the money, during his first term separately. Speaking of the claim of the children of Wilie Vaughan, he says, " There was no order to pay out the fund received by Evans during his first term —there was no *demand*.    Nor could any payments have been made to the children, they being infants.    Edward Newhall's claim—the fund was received during the first official term, no order made to pay it out, nor any *demand* until the second term.    Of course, upon the principles I have applied to the foregoing claims, this cannot be charged to the first set of securities."    From the decree of the Chancellor an appeal was taken upon several grounds, two of which are as follows : " Because the sureties in the first bond are liable for all moneys received by the commissioner during that term, unless they show that the same were paid over to his successor"—" *Because the receipt of money during the first term charges the sureties; and the fact that when called on, he is not able to pay, is conclusive evidence of default during that term, until the contrary is made to appear.*"

The decision of the Chancellor was sustained, with one exception.    A majority of the court held that in those cases in which the commissioner had been ordered by the court to pay over, or invest the money in his hands, during his first term, and had neglected to do so, ought to be regarded as *prima facie* evidence of a *demand*, and the first securities liable therefor.    HARPER, Judge, sustains the Chancellor throughout.    He says : " It will be necessary to add very little to the very satisfactory reasoning of the Chancellor on the several points involved in this case.    If it were shown that the commissioner had *wasted, or converted to his own use, the funds officially in his hands, as by purchasing property with a bond taken by him as commissioner, during his first term of office,* I should think the sureties of that term ought to be answerable.    But in the absence of any testimony on the subject, the presumption is that he retained the funds, and

that they were in his hands as his own successor." After reviewing the authorities, the learned judge continues : " There was no *default*, and no cause of action against Evans till the money was demanded, and he refused to pay it ; and no demand was shown *during the first term*." The other two judges, Johnston and O'Neal, say : " We concur generally in the views expressed in this opinion ; but we are of opinion the neglect of the commissioner to pay over or invest money, *as ordered by the court*, was a breach of the condition of the bond, and that the application for such order ought to be regarded as *prima facie* evidence of a demand, and that the sureties to the bond of the term in which such order was made are liable, and the decree of the circuit court is ordered to be accordingly so modified. In other respects it is affirmed." On what principle was it that the first securities of Evans were held not to be liable for moneys received by him during his *first term* of office ? Clearly, because it was his duty as an officer to receive the money, and no *default* or *malfeasance* was shown on his part in relation to its application during the time they were bound for him. One of the grounds of the appeal from the decision of the Chancellor asserts the position taken by the plaintiff in error in this case, that " *the receipt of the money during the first term charges the sureties, and the fact that when called upon he is not able to pay, is conclusive evidence of default during that term, until the contrary is made to appear.*" But this ground, as we have seen, was overruled by the court, and the principle distinctly asserted, that to make a security liable on his contract for the faithful performance of a legal duty, some *breach* of that contract must be *affirmatively* shown by his principal, during *the time he is bound for him*. The reception of the money by Woods, the guardian, was no *breach* of his bond ; it was his *duty* to receive it. The fact that he was insolvent at the time of the trial, is no evidence he wasted his ward's effects *during the time Vason was his security*. The insolvency of the guardian subsequently to the discharge of his security, may be *prima facie* evidence he wasted the effects of his ward at *some time*—but when ? We are all of the opinion, not only on principle but authority, that the burden of proof is on the plaintiff, when a security has been discharged, to show *affirmatively* some act of waste or maladministration on the part of the guardian *prior to such discharge*. The bare reception of the money by the guardian before the discharge of the security, and the insolvency of the guardian at a period *subsequent* to such discharge, would not, in our judgment, be sufficient to render the discharged security liable, without further evidence going to establish a breach of the bond by the guardian *prior* to such discharge.

The Act of 1805, providing for the discharge of securities, was a *remedial* statute, and it is the duty of the court so to construe the Act as to suppress the mischief, and advance the remedy.—*1st Bl. Com.* 87.

If the discharged security is to be made liable for the money received by the guardian before his discharge, without further proof of default or waste, as contended for at the bar, the act of 1805 would afford no remedy to the security ; for, in most instances, the money and effects of the ward are turned over to the guardian shortly after his appointment. The security would be liable, at all events, for the money received by the guardian in the lawful discharge of his duty, although no *default* or *waste* shown prior to his discharge. The legislature, in our judgment, in-

tended to afford *substantial* relief to securities. The counsel for plaintiff in error relied on a *dictum* in the case of Field *vs.* Pelot, (*McMullan's Eq. Rep.* 383,) in which Chancellor Harper intimates as his opinion, where a guardianship should be revoked, it would not be necessary to show the guardian had wasted the funds, or committed any act of mal-administration before the revocation. This dictum of the learned Chancellor does not appear to us to be well founded in principle, or sustained by the previously adjudicated cases in that State. Chancellor Johnston, who dissented from the opinion of the court in that case, says: "No case can be found, (I speak with confidence,) in which, after new security given, the preceding sureties had been charged, unless some *breach of duty* was committed by the principal during *their time*, and then, their liability has always been restricted to that." The view taken of the question by Chancellor Johnston, is sustained by the cases of Trimmier *vs.* Trail, and Vaughan *vs.* Evans, before cited, in both of which Chancellor Harper concurred, and which we think is founded on the better reason.

The court below having decided the discharge of the first securities, released them from all liability, both *past* and future; the judgment must be reversed on that ground, and a new trial granted.