PRICE, administrator, *et al. v.* CARLTON, administrator, and *vice versa.*

1. As a general rule, the surety on a bond given in a judicial proceeding, conditioned to pay the eventual condemnation-money, will not be permitted to intervene in the proceeding. But where the principal is insolvent and does not defend in good faith, or where the surety has a defense peculiar to himself which the principal is under no legal obligation to plead, equity will permit him to intervene.

2. An equitable petition was brought for a general accounting. A contract between the parties relating to land was attached to the plaintiff's petition and introduced in evidence. The plaintiff contended that it was a contract of purchase; and the defendant that it was one of rental. Judgment was rendered, finding the plaintiff indebted to the defendant in a given sum as rent for the land described in the contract, for a specified number of years. *Held*, that this judgment was conclusive against the plaintiff, as to the character of the contract and the amount of rent due thereunder, in a distress-warrant proceeding brought by the defendant against him, claiming the amount found by the judgment as rent for the land.

3. *Held* also, that the surety on the eventual condemnation-money bond given by the defendant in the distress-warrant proceeding was likewise concluded by the judgment, even though he had been allowed to intervene in that proceeding.

Argued May 26, — Decided October 17, 1904.

Distress warrant. Before Judge Holden. Oglethorpe superior court. January 25, 1904.

On March 4, 1886, J. H. Newton and Thomas Hawkins entered into a written agreement, reciting that Newton had agreed "to bargain," "to sell," to Hawkins a part of what was known as the Billups tract of land. The contract provided that if by January 1, 1896, or at any time previous thereto, it should become "evident and beyond a doubt" that Hawkins could not pay for the land, the agreement relating to the purchase of the land should be void, "and a final settlement relative to the purchase and sale of the land shall be settled for as having been rented

from said Newton by said Hawkins at the price for annual rent of $150.00 per year from the first of January, 1881, the time he went on the place." In 1889 Newton died, and Lamar Cobb qualified as the executor of his will. On March 10, 1893, the executor of Newton had a distress warrant issued against Hawkins, claiming $1,773.70 as rent for the tract of land referred to in the foregoing agreement. Hawkins made a counter-affidavit, denying that he owed the amount claimed or any other sum as rent, and gave bond for the eventual condemnation-money, with James M. Smith as surety. The issue was returned to the superior court of Oglethorpe county, in which county the land was situated. A short time previously to the issuing of the distress warrant an execution had been levied upon the tract of land, then in the possession of Hawkins, from Clarke county, issued in the case of Dearing against Cobb as executor of Newton's will, which execution asserted a special lien against the Billups property. Notice of the levy was served upon Hawkins. In November, 1893, Hawkins filed a petition in equity in Clarke superior court against Dearing's executrix, the executor of Newton, and the sheriff of Clarke county, which stated, among others, the following facts: In 1881 Newton sold to Hawkins 200 acres of the Billups tract, possession of which Hawkins took, January 1, 1881, and he has been in continuous, open, adverse possession of the property from that time to the time of the filing of the petition. Hawkins had agreed to buy the property from Newton for the sum of $2,000, with eight per cent. interest. None of the property was cleared or improved at the time he took possession, and he put upon it permanent improvements which cost more than $2,000. He paid Newton, between 1883 and 1887, about $2,384 over and above all other indebtedness, which sum should be credited upon the purchase-price of the land. Since the death of Newton he paid his executor about $1,870, which should be credited upon the purchase-price of the land, and upon a fair settlement the estate of Newton was indebted to Hawkins; but if this was incorrect, and a balance should be found due from petitioner, he stood ready to pay it. On March 4, 1886, petitioner entered into a written contract with Newton for the purchase of the land, a copy of which was attached to the petition as an exhibit. The petition then set forth reasons why the sale under the Dearing

execution should be enjoined, and prayed for an injunction. It also prayed that the executor of Newton "come to a fair, full, and complete and equitable settlement with petitioner, and that if any amount is found due by petitioner, he be decreed to pay the same, which he stands ready to do; and that if it be found that the Newton estate is due petitioner anything, that he have judgment for the same." Cobb, executor, filed an answer to this petition, setting up that at the time the contract between Newton and Hawkins was entered into, Hawkins was indebted to Newton some $2,000 for advances and supplies previously furnished him. The answer also averred, that up to the time of the death of Newton, Hawkins paid him each year what he claimed was the proper portion for rent of the crops raised on the place; and that Hawkins "never claimed said land in his own right." The answer then set forth in detail the state of affairs between Hawkins and Newton's estate. The judge refused to enjoin the sale under the Dearing execution, and Hawkins was dispossessed in 1894. The case was referred to an auditor. Hawkins amended the petition by averring that he had paid Newton and his executor all of the purchase-price of the land, and had put permanent improvements thereon to the value of $3,000. He prayed for a judgment for the purchase-money and the value of the improvements. After a delay of several years, the auditor made a report in which he held, that "under the contract and evidence in the case, the plaintiff Hawkins was a purchaser, and entered as such," and was entitled to damages by reason of his eviction. The auditor also found as follows: ".Then as to the purchase-price or rental of the land, I find and so find that if the defendant had seen fit to proceed against the plaintiff as a purchaser by suit in ejectment, that the plaintiff would clearly have been liable for the original contract price, $2,000, with interest at eight per cent., but inasmuch as the defendant did not see fit to do so, but elected under the terms of the written contract of 1886 to treat plaintiff as a tenant, and demand possession of the premises, and by enforced sale of premises by another party, which the defendant did not see fit to stop or prevent, I hold, in view of these facts, that the plaintiff Hawkins would be liable under the contract only for yearly rental of $150 as stipulated for the 13 years he occupied the place, to wit, from 1881 (inclusive) to 1894. And the plaintiff is liable in this

accounting between the parties for the sum of $150 for each of the years named, with interest at seven per cent. from the end of each of the several years." And also: "The plaintiff is chargeable with the sum of $150 per year for the thirteen years he occupied the place, with lawful interest, as specified above, and is to be credited with one thousand dollars ($1,000) damages, allowed by reason of improvements made on the place."

Upon the report of the auditor a verdict and judgment were entered, the verdict reciting in part as follows: "In conformity with the auditor's report, we, the jury, find for the defendant, Lamar Cobb, executor of Newton, the sum of $1,267.52, principal, and the sum of $613.72 interest, . . . being the balance due on rents at the rate of $150 per annum, as found by the auditor's report." The verdict and judgment were rendered December 7, 1900, and no exception has ever been taken thereto. During the pendency of this litigation, the distress-warrant case in Oglethorpe county was, by agreement of counsel, continued from time to time, it being supposed that the case in Clarke county would determine the issues involved in the proceeding in Oglethorpe. In fact, for several years docket entries were made in Oglethorpe, when the case was continued there, to the effect that it was "controlled by equity case." When the distress-warrant proceeding was finally taken up for trial, in 1902, James M. Smith, the surety on the eventual condemnation-money bond, filed a petition alleging the issuance of the distress warrant, its levy, the giving of the counter-affidavit and bond; that Hawkins had died insolvent; that Price had been appointed administrator, and had consented to be made a party in the proceedings; that the plaintiff had agreed to release Price as administrator against loss or personal liability, provided he would consent to be made a party and not defend; that under the foregoing arrangement Price had failed and refused to defend, by reason of the agreement, and the plaintiff was seeking, by the distress warrant, to obtain a judgment against the insolvent estate of Hawkins and the petitioner as surety on the eventual condemnation-money bond. It was alleged, that Hawkins was not a tenant of Newton, or of his estate, at the time the distress warrant issued; that he had not gone into possession of the premises as a tenant of Newton, but under a contract of pur-

chase, and owed no rent; that if the plaintiff was permitted to consummate the arrangement entered into with Price, he would obtain a judgment against the estate of Hawkins, which would constitute a legal fraud upon the petitioner; that the written contract of purchase under which Hawkins went into possession of the tract of land described therein was in the possession of the executor of Newton. He prayed that he be permitted to intervene and offer any defense Hawkins could make. The court allowed the petition of Smith and directed that he be made a party to the cause. The executor of Newton answered the intervention, admitting the issuance of the distress warrant, the giving of the counter-affidavit and bond, the insolvency and death of Hawkins, and the consent of Price as administrator to be made a party. The collusion between the representative of the Newton estate and Price was denied. The answer averred that while Hawkins, under the written contract with Newton, was a conditional purchaser, his failure to pay any portion of the purchase-money made him a tenant at will. It was admitted that the executor of Newton had in his possession the original contract of purchase under which Hawkins went into possession. In the meantime Carlton had succeeded Lamar Cobb as the legal representative of Newton's estate. He amended the answer to the intervention, by pleading the judgment in the case in Clarke superior court, as res adjudicata of the issues raised in the distress-warrant proceeding. Smith then amended his intervention by alleging that he was not a party to the Clarke county litigation; that he had no notice thereof and did not consent to it; that although the distress warrant and counter-affidavit were pending in Oglethorpe county, Cobb as executor did not plead their pendency in abatement of the Clarke county suit, and thereby Smith's risk as surety was increased; that in 1891 Cobb and Hawkins had a full settlement, under which it was agreed Hawkins had paid all of the indebtedness due to Newton prior to the purchase of the Billups land, and was then indebted only for the purchase-price of the land, and for this reason there was no rent due at the time of the issuance of the distress warrant, which facts became known to Smith since the filing of that petition. The foregoing amendment was stricken by the court, upon demurrer, and exceptions pendente lite to this ruling were filed

by Smith. Demurrers of Smith to the plaintiff's amendments were overruled. At the trial there was evidence that counsel upon both sides of the litigation in Oglethorpe county agreed that it was useless to proceed with that litigation until that in Clarke county had been disposed of. The written contract between Newton and Hawkins was introduced, as well as the settlement between Hawkins and Newton's executor, made in 1891, and referred to in the amendment of Smith. The record of the suit in Clarke superior court was also introduced in evidence. The defendant moved for a nonsuit, which was overruled, and the court then directed a verdict in favor of the plaintiff. A motion for a new trial was made, and was overruled. Smith and the administrator of Hawkins filed a bill of exceptions, in which error is assigned on the various rulings adverse to them. Carlton, administrator, also excepted by cross-bill, and assigns error on the ruling of the judge allowing Smith to intervene as a party defendant.

*Hamilton McWhorter, Berry T. Moseley, David W. Meadow* and *John L. Hopkins & Sons* for Price, administrator, *et al.*

*Samuel H. Sibley,* contra.

FISH, P. J. (After stating the foregoing facts.) 1. As a general rule, a surety on an eventual condemnation-money bond has no right to be heard in the proceeding against his principal, in which the bond was given. In *Holmes* v. *Langston,* 110 *Ga.* 861, 869, sureties on a bail-bond in an action of trover, one of the obligations of which was, like the bond in the present case, to pay the eventual condemnation-money, sought to intervene in the bail-trover proceeding. Their prayer to be made parties was denied; and this judgment was affirmed by this court. In the opinion (on page 869) it was said : The securities "are bound by the judgment against their principal, but they do not become parties to the case until judgment is entered. If there is any law authorizing such securities to be heard in the case, we are not aware of its existence." The court added, however, that even if they had become parties to the case under consideration, there was no merit in their defense. It has been held that in a suit on an administrator's bond the sureties might defend, even though the principal does not, and set up any reason which would relieve the principal, as well as any fact which would discharge them though

the principal be held liable.    *Bird* v. *Mitchell*, 101 *Ga.* 46.    We need not, however, discuss now the question as to what would be the rights of a surety on a bond given in a judicial proceeding where suit was brought directly on the bond and no judgment was entered against the surety in the main case.    There may be instances where equity would permit a surety on an eventual condemnation-money bond to intervene for his own protection.    If, for example, the principal is insolvent and declines to defend, the surety ought to have a right to be heard.    Or if the surety has a defense peculiar to himself, and one which the principal is under no obligation to urge, the surety may be permitted to intervene. In Coburn *v.* Smart, 53 Cal. 742, it was held: "The sureties of a defendant in an action of replevin, upon an undertaking given to effect a return of the property in controversy to the defendant pending the action, have an interest in the action which entitles them to intervene if the defendant is insolvent, and the action is not being defended in good faith."    See also Hoffman *v.* Steinau, 34 Hun, 239; 16 Enc. P. & P. 937–8; 1 Brandt on Suretyship (2d ed.), § 250; 2 Id. § 506; Guthrie *v.* Capelle, 1 Har. 368. Certainly equity will not permit an insolvent principal to render a solvent surety liable by collusion with the creditor and a failure to urge defenses which would discharge himself and the surety as well.    Under the code, judgment may be entered in the main proceeding, against the surety on an eventual condemnation-money bond.    Civil Code, § 2978.    Of course, if such a surety had a defense peculiar to himself, equity would permit him to resist the enforcement of the judgment against him.    And the judgment may be impeached for fraud, collusion, or mistake.    Charles *v.* Hoskins, 14 Iowa, 471.    But will it require him to wait until after judgment is entered?    We think not.    Equity always seeks to avoid circuity of action and a multiplicity of suits.    And where the surety has a defense which would discharge him, and which the principal is under no legal obligation to make, as where the principal is insolvent and is not defending in good faith, we see no good reason why equity should not, and many reasons why it should, permit the surety to intervene and set up his defenses in the main proceeding.    This conclusion does not conflict with the ruling in *Holmes* v. *Langston*, supra.    Language used there is somewhat broad; but there was no suggestion in that case that

the principal was not defending in good faith, nor did the sureties seek to set up a good defense peculiar to themselves which the principal was under no legal obligation to plead, even if he could do so.   We think, therefore, that the court did not err in overruling the demurrer to the application of Smith, the surety, to intervene.   His right to intervene and set up defenses peculiar to himself as surety would not give him a right to file any defense which his principal could make.   *Holmes* v. *Langston*, 110 *Ga.* 869. And hence he could not set up such a defense unless he established his allegations of collusion and bad faith on the part of Price, the administrator of Hawkins.   There was no evidence introduced in support of these averments.   We have, however, in the discussion which follows, given Smith the benefit of these allegations and dealt with them as if they had been established by evidence.   Inasmuch as we have reached the conclusion that there is no merit in any of the defenses relied on by him and which are properly before us, it is unnecessary to determine what effect the failure to verify the answer to his intervention would have, when the intervention was sworn to; or whether, if the answer is to be disregarded, the allegations of the petition should be taken as true, or should still, under the decision in *Hudson* v. *Hudson*, 119 *Ga.* 637, be proved by him.   Smith filed two amendments to his intervention.   Both of these were stricken on demurrer.   He excepted pendente lite to the striking of one of the amendments, but, so far as the record shows, no exception was taken to the striking of the other.   The only ground of the amendment to the striking of which exception was taken, which was argued in this court, was that one which sets up that the judgment in Clarke superior court in the suit brought by Hawkins against Dearing and Newton's executor was not binding upon Smith, the surety.   For this reason, this ground only of the amendment will be dealt with.

2.  Smith contends that the judgment in the litigation in Clarke county was not conclusive upon Hawkins as to the issue raised by the distress warrant and counter-affidavit in Oglethorpe county; and that even if that judgment was res adjudicata as to Hawkins and his administrator, it was not so as to Smith.   " An adjudication of the same subject-matter in issue in a former suit between the same parties, by a court of competent jurisdiction, should be an end of litigation."   Civil Code, § 3741.   " A judg-

ment of a court of competent jurisdiction is conclusive between the same parties and their privies as to all matters put in issue, or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered." Civil Code, § 3742. "The judgment of a court of competent jurisdiction is conclusive between parties and privies, as to the facts which it decides, until reversed or set aside." Civil Code, § 5348. Mr. Freeman, in his work on Judgments, states that to make a matter res adjudicata, there must be a concurrence, (1) of identity of the subject-matter; (2) of the cause of action; (3) of persons and parties; (4) in the quality of the person against whom the claim is made. § 252. The rule laid down in Massachusetts is that the court will inquire, (1) whether the subject-matter of the controversy has been brought in question and within the issue in the former proceeding, and has terminated in a regular judgment on the merits; (2) whether the former suit was between the same parties in the same right or capacity, or their privies claiming under them; (3) whether the former judgment was before a court of competent jurisdiction. See 1 Gray, 299. The rule stated by the Supreme Court of the United States in Cromwell *v.* County of Sac, 94 U. S. 351, is, that where the two actions were upon the same claim or demand, the judgment in the first action is conclusive as to every matter actually involved, and as to every admissible matter which might have been received to sustain or defeat the claim or demand; but that where the second suit was upon a different claim or demand, the judgment in the first is conclusive only as to issues which were actually litigated. See also *Worth* v. *Carmichael,* 114 *Ga.* 699. These rules, though not in all respects consistent with each other, were all apparently approved by this court in *Brady* v. *Pryor,* 69 *Ga.* 691, and in *Stevens* v. *Stembridge,* 104 *Ga.* 622–623. We do not understand, however, that either of these decisions was intended to be an authoritative ruling as to the correctness of any one of the rules stated. In the first case nothing more was ruled than that a party to an award was not, in subsequent litigation to foreclose a mortgage given by him to secure the payment of amounts found against him by the award, concluded by mere recitals in the award, which related to a matter not really involved in the award, and not intended to be made a part of the judgment which was

entered up on the award. In the second case it was ruled that where a defense of partial payment, made by the defendant in an illegality to the foreclosure of a mortgage securing the payment of promissory notes, was sustained, this would be conclusive upon the plaintiff in a subsequent action upon the notes. Mr. Herman says: "An adjudication by a competent tribunal is conclusive, not only in the proceeding in which it is pronounced, but in every other where the right or title in controversy is the same, although the cause of action may be different, between the same parties or their privies." 1 Herman on Estoppel and Res Jud. 233. It is not necessary that all the parties in the first suit should have been parties in the second; it is enough if all the parties in the second suit were parties in the first. 24 Am. & Eng. Enc. Law (2d ed.), 733 (4). The judgment will be conclusive on all issues which were involved in a former suit, even though the cause of action was not the same in the two cases. Id. 778–779. It is immaterial that the two actions were based on different grounds, or tried on different theories, or are instituted for different purposes and seek different relief. Id. 780–781.

In *Freeman* v. *Bass*, 34 *Ga.* 355, suit was brought on a promissory note, given, among other things, for the purchase-price of slaves. The defendant sought to recoup damages on account of the unsoundness of one of the slaves. The plaintiff set up res adjudicata, and introduced the record of another suit brought by him against the defendant in another court on another promissory note based upon the same consideration. In that suit the defendant had pleaded failure of consideration, growing out of the unsoundness of the same slave. It was ruled that, "When the subject-matter of defense to a promissory note has been passed upon by a court of competent jurisdiction, such judgment, while in force, is conclusive." In *Duncan* v. *Stokes*, 47 *Ga.* 593, it was held that a judgment in a suit on an open account was conclusive in a subsequent action between the same parties, growing out of the same transaction, wherein it was claimed that the defendant was liable to pay the amount of the account by reason of fraud and deceit practiced upon the plaintiff. In *Holmes* v. *Langston*, 110 *Ga.* 861, an action of trover was brought against Holmes to recover certain promissory notes which had been deposited with the plaintiffs as collateral security for two notes of the defendant,

and which had been returned to the defendant for collection.    It appeared that the plaintiffs had previously brought suit against the defendant on his two notes and had recovered a verdict in a given amount.    It was held that in the trover suit the defendant Holmes, "so far as the amount of his debt to plaintiffs is concerned, was precluded from pleading or proving any matter which was or could have been placed in issue in the former suits."    In the present case the two suits were not based upon the same cause of action, but they involved the same issue, and the subject-matter in each instance related to the character and amount of the indebtedness of Hawkins under the contract with Newton. The fact that other issues were involved in the Clarke county suit is immaterial.    The issue between Hawkins and Newton's estate was the determination of the amount which Hawkins owed the estate upon a general accounting of all matters between them. This necessarily involved the amount due under the contract with Newton relating to the Billups land.    This contract was attached to the petition as an exhibit.    Hawkins brought this issue into the case.    He alleged that it was a contract of purchase. Newton's executor in effect denied this.    Thus the issue was made up.    In order to ascertain the amount of indebtedness due by Hawkins, it was absolutely necessary to determine whether the contract was one of purchase, or whether it was to be treated at that time as one of rental.    If of purchase, Hawkins owed $2,000 with 8% interest per annum; if of rental, he owed $150 a year rent from the time he went into possession of the land.    It was therefore absolutely essential that the auditor should determine the relationship of the parties with reference to the contract.    He decided this issue by holding that while the contract was originally one of purchase, it became, under its terms, by action of the parties, a contract of rental; and he found that Hawkins was indebted to Newton's estate so many dollars as rent for the land in question.    Upon this report of the auditor a verdict and judgment were entered in favor of Newton's executor, and they have never been reversed or set aside.    When the whole of the auditor's report is read there can be no question that he intended to determine the issue in relation to the contract, and the judgment entered up on the report can certainly admit of but one construction.    Such being the case, the judgment was conclusive upon

the administrator of Hawkins, both as to the issue which he sought to raise and as to the amount of rent due under the contract.

3. Was the judgment res adjudicata as to Smith? The obligation of a surety is one of strict law, and can not be extended by implication. Civil Code, § 2968; *Bethune* v. *Dozier*, 10 *Ga.* 235; *Steele Co.* v. *Laurens Co.*, 98 *Ga.* 354; *Hill* v. *O'Neill*, 101 *Ga.* 834. The general rule is that the judgment against the principal is only prima facie evidence of liability against the surety, unless the condition of the bond makes it otherwise. See 27 Am. & Eng. Enc. Law (2d ed.) 455. This rule has been applied in this State to sureties on administrators' and guardians' bonds. *Justices* v. *Woods*, 1 *Ga.* 84; *Smith* v. *Gettinger*, 3 *Ga.* 143; *Bennett* v. *Graham*, 71 *Ga.* 211; *Gibson* v. *Robinson*, 90 *Ga.* 756 (2), 762. Sureties on replevin and attachment bonds are, in the absence of fraud or collusion, generally concluded by the judgments against their principals. 2 Brandt on Suretyship (2d ed.) §§ 471, 481. And so also are sureties on injunction bonds. Id. §§ 479, 480. Formerly it was necessary to bring suit against the sureties on the bond, but our code expressly provides that where a bond is given in a judicial proceeding, conditioned to pay the eventual condemnation-money, judgment may be entered up against the surety, and it shall not be necessary, as heretofore, to bring suit on the bond. Civil Code, § 2978. See also *Offerman R. Co.* v. *Waycross R. Co.*, 112 *Ga.* 613. There is a similar provision in the code with reference to sureties on bail bonds, who are also bound for the eventual condemnation-money. Civil Code, § 4605. In *Jackson* v. *Guilmartin*, 61 *Ga.* 544, it was said: "The bail or security takes the fortunes of his principal, and is bound equally with him by the judgment in the main action. No suit on the bond is necessary. The bail can no more go behind the judgment or attack it, by affidavit of illegality, after it is duly entered up against both, than can the principal." See also, in this connection, *Thomas* v. *Price*, 88 *Ga.* 533 (2). In *Holmes* v. *Langston*, 110 *Ga.* 861, 869, which was also a bail-trover proceeding, it was said: "Their liability is absolutely fixed by the judgment against their principal, and they must stand or fall by the result of his defense, such being the express undertaking in the bond. If judgment has been rendered against

him by a court of competent jurisdiction, they are absolutely bound by it, and will not be heard to impeach or attack it in any way for causes which were or could have been matter of defense by their principal. . . After becoming securities on the bond they must remain silent witnesses to the conflict between the parties to the suit, standing ready to fulfil at the end of the litigation the obligation they have undertaken." See also, in this connection, *Lockwood* v. *Saffold,* 1 *Ga.* 72; 2 Brandt on Suretyship (2d ed.) § 483; 2 Van Fleet's Former Adj. § 557. Judgments do not bind strangers, but a surety is not a stranger to the judgment against his principal. " A surety is either a stranger where the action is brought by a plaintiff against the principal alone, or he is a privy. If a stranger, he can not be permitted to take advantage of a judgment in favor of his principal; the action must be tried de novo against him. This gives him the right to plead all the defenses his principal did, and as the case would have to be tried by an entirely different jury, its verdict might be contrary to that rendered against the principal; and the natural sequence would be of having two antagonistic verdicts on precisely the same facts; for it is said that if separate suits be brought for the same cause of action against co-obligors, where one is principal and the other surety, and the principal is discharged on trial of a plea to the merits, which would inure to both if sued jointly, such judgment is not an estoppel against the plaintiff, if pleaded by the surety in bar of the action against him, for the reason that strangers are not bound by an estoppel, nor can they take advantage of it. It must, therefore, be evident that in the sense in which parties are held to be strangers, and not bound by *res adjudicata,* can not apply to sureties. They must therefore be privies." 1 Herman on Est. & Res Jud. 172–173. See also §§ 162, 173. If the judgment were in favor of the principal, the sureties could plead it in bar of an action against them on the bond. *Brown* v. *Bradford,* 30 *Ga.* 927. " Any act of the principal which estops him from setting up a defense personal to himself, operates equally against his surety." McCabe v. Raney, 32 Ind. 309. " The surety's obligation is to satisfy the judgment against his principal. . . If that judgment is good against the principal, the surety can not dispute its validity." McCloskey v. Wingfield, 32 La. Ann. 38, 43. See also Boone County v. Jones, 54 Iowa, 699 (6), 709.

It follows from these authorities that if Smith had not intervened in the distress-warrant proceeding, he would have been bound by the judgment entered in that case even though it had been entered against the principal alone, and would not have been heard to resist the enforcement of the judgment against him by showing that it was erroneously or improperly entered in the first instance. He would not have been allowed to urge that the plea of res adjudicata filed by the plaintiff was not well taken, or indeed to have set up any defense which his principal could have made. The section of the code allowing judgments to be entered against the surety but emphasizes the rule that the surety would be bound by the judgment against his principal; for why permit judgment to be entered against the surety, when he could go behind the judgment and try the whole matter de novo? The statute recognized the rule which bound the surety, and was evidently intended to do away with a useless suit on the bond, when the liability of the surety had already been adjudicated. Certainly the fact that Smith was allowed to intervene can place him in no better position with reference to the binding effect of the judgment than if he had not become a party. He was allowed to intervene for his protection, but this did not have the effect of abrogating well-settled rules concerning the relationship between him and his principal. After having intervened he undertook to represent both the principal and the surety. As principal he could insist that the judgment in Clarke county was not res adjudicata. As surety he could plead any fact which furnished him a defense independently of the principal. But he could not by pleading avoid the effect of the rule which made him bound by a judgment which bound the principal. In other words, he occupied no better position, with reference to defenses which the principal could have urged, than if he had never become a party. It is argued that Smith's obligation extended only to the particular case in which the bond was given, and that to hold him bound by the judgment in Clarke county would in effect make him liable on a judgment rendered in an entirely different case. *O'Dell* v. *Wootten*, 38 *Ga.* 224, and *Planters Bank* v. *Hudgins*, 84 *Ga.* 108, are cited and relied on in support of this proposition. The judgment in Clarke county was simply the evidence on which the judgment in the distress-warrant proceed-

ing was based; and it is the latter judgment upon which he is liable.    The judgment in Clarke county could not have been enforced against Smith; nor could a suit based on such judgment have been maintained against him on the bond.    This is the extent to which the principle of the decisions cited goes.    They do not furnish a precedent for allowing the surety to inquire into the merits of the judgment against the principal in the proceeding in which the bond was given, and reopening the case as to the surety, merely because that judgment was itself founded on another judgment against the principal which was held to be res adjudicata.    The same reply may be made to the contention that Smith can not be held bound by the finding of the auditor and the judgment in the Clarke county litigation, because he was entitled to a jury trial under the terms of his bond and the statute; for which contention *Willis* v. *Bivins*, 76 *Ga.* 745, is cited. Smith was entitled to the verdict of a jury in the distress-warrant proceeding, and that was all he had a right to demand.    The fact that the judgment in Clarke county made it necessary to direct a verdict can make no difference.    There being no conflict in the evidence, it was proper to direct a verdict.    See *Robinson* v. *Wilkins*, 74 *Ga.* 47.    This view of the case makes it unnecessary to construe the contract between Hawkins and Newton, relating to the Billups land.

The foregoing discussion disposes of all the questions in the record which are insisted on here and which are necessary to be decided under the view we have taken of the case.    There was no error in the record; and the judgment on both the main and the cross-bill of exceptions is

*Affirmed.    All the Justices concur, except Cobb, J., disqualified.*