## Yazoo & M. V. R. Co. *v.* Herrin.

[ 74 South 688, In Banc.]

1. RAILROADS. *Contracts. Construction.*

Where plaintiff entered into an agreement with a railroad company, whereby he was licensed to place a track scale in the track of the company, the contract providing that the scale should be constructed at the sole expense of plaintiff under the supervision of the company's roadmaster, that the company should be allowed to use the scale free of charge whenever it should desire, that plaintiff should indemnify the company for any expense or damage it might incur or suffer, caused by the construction, use, or maintainance of the scale, and that plaintiff should remove the scale within thirty days after being notified in writing by the company to do so, and if he should fail to comply with such request, the company should have the right to remove the scale at the risk and expense of plaintiff, such a contract did not give plaintiff any right to maintain the scale for a term of at least thirty days, and the railroad company, without being guilty of conversion, might, without notice, remove the scale, but in such case plaintiff would not be liable for the expense of removal.

2. SAME.

In such case if it was necessary to the protection of the property of the railroad company or the safe operation of the road to remove the scale, such removal was not a tortious conversion of the property by the railroad company.

APPEAL from the circuit court of Coahoma county.
HON. T. B. WATKINS, Judge.

Suit by W. K. Herrin against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mays & Mays,* for appellant.

A contract is to be construed in accordance with the manifest intention of the parties. *Wadlington* v. *Hill,* 10 S. & M. 560; *Hart* v. *Gardner,* 74 Miss. 153. In the

case of *Waddell* v. *Devet,* 76 Miss. 104, it is held that: "It is the duty of a court in construing a contract, to place itself in the situation of the parties at the time the contract was made, and to ascertain their intention from the contract in the light of that situation looking also to the subject-matter of the contract." Here was a Railroad Company making a contract to allow a party to put track scales in its track. This company was not only bound to continue its tracks free and open for operative purposes as a revenue matter to itself, but it was under duty to do this under the laws of the state. It contracted to allow the scales to be placed in its track, provided, that they were so constructed as not to interfere with the operation of the road.

This first section of the contract applies as well to maintenance and repairs as to the original placing of the scales; and it was the duty of plaintiff at all times to keep the scales in such condition as to not interfere with the operation. This was the primary consideration for the allowance, on the part of the company, of plaintiff to place scales.

In Toledo, 53 N. Y. 60, it was held in construing a sewerage contract, that the word "construct" means the maintenance, preservation and repair as well as the establishment of a sewer. In the case of *Town of Pelham* v. *Woolsey,* 16 Fed. 418, it is held that the construction of a dock includes keeping it constructed by necessary repairs. In addition to this, under clause 3 of the contract it is provided, that Herrin shall bear any expense or damage caused by the construction, use or maintenance of the said scales.

Our contention is, that, under the terms of this contract, section 4, which requires thirty days' notice before removal of scales, is ineffective, for the reason that the first duty the contract imposes upon the plaintiff is to so construct and maintain the scales as that they should not interfere with the operation of the railroad. If plaintiff had done that, and the railroad company had de-

sired to remove the scales for some purpose of its own, then the thirty days' notice was to be given.

In order to constitute a conversion, there must be a tortious act, a wrongful interference without claim of right on the part of one person with the property of another to the deprivation of the true owner's control of same.

Our further contention is, that, the court erred in refusing defendant's instructions, number 7 and 8. In these instructions the defendant undertook to get the court to tell the jury, that, if they believed from the evidence that the necessary and convenient operation of the side track required the defendant should take out the scales, which they had permitted the plaintiff to put in there under contract, that the defendant had the right to take it out; and if the jury believe from the evidence, that in taking it out no part of the scales was damaged and no part of it was in any manner converted to the use of the company, the jury will find for the defendant.

And instruction number 8, by which the defendant undertook to tell the jury, that it had a right to remove the scales without giving notice required by the contract, if they believed from the evidence that the timbers used for the supporting scales had become so rotten and decayed that the side track was dangerous and could not be used.

We contend that these instructions were proper and should have been given, because the contract stipulated that the scales should not interfere with the use and operation of the side track by the railroad company, whether this was caused by the original construction, or the bad state of repair into which the plaintiff had permitted the scales to get. The thing which the railroad company contracted against, in permitting these scales to be put there was, that the operation of the road should not be interfered with by the placing of these scales. Plaintiff bound himself not to interfere with the use and operation of the side track by the company; and, if he

did, then the contract itself was automatic and permitted
the company to do those things which were necessary in
order to use its track, even to the extent of removing
the scales without notice. We contend, therefore, that
these two instructions as here quoted embody the law
which is applicable to the case, and should have been
given.

The railroad company never intended that its use of
its side track should be interfered with by placing these
scales there; and undertook, by the same contract by
which it gave authority to place the scales in the track,
to protect itself against the very thing which did hap-
pen, and which caused them to take up the scales. The
thirty days' notice required by the contract clearly
means, that this notice shall be given provided plaintiffs
complied with their feature of the contract, to keep the
scales in such condition as not to obstruct the operation
of the road. If they had done this, then they had a right
to claim, before the railroad company could make any
change in its contract or take up these scales, that they
should have this thirty days' notice.

Repeating again, we say, that the court should have
left it to the jury, under proper instruction, to say
whether or not there was a conversion, which it did not
do. And the court should have given the two refused
instructions quoted, and should have primarily instruct-
ed the jury that the thirty days' notice did not apply,
unless they believed that the plaintiffs had kept the
scales in such degree of repair as would not have pre-
vented the operation of the road.

*Cutrer & Johnson,* for appellee.

We submit that whether purposely or not appellant
"overlooked its hand" and arbitrarily, in utter disre-
gard of the right of others, with most unbecoming haste
for the very purpose of avoiding being stopped by pro-
ceedings of the court rushed upon the scene and fell

upon this unoffending scale with a degree of violence and wantoness which might be commendable in an attacking army, proceeded to demolish it then, figuratively speaking, laughed in its sleeve at the writ of injunction, and now when brought into a court of justice and sought to be held liable for this act of vandalism, urges that Herrin let the scale get out of repair and permitted it to remain in that condition so long as to justify them in tearing it up and appropriating to their own use such parts thereof as they could use. Clearly there was no sort of compliance with the terms of their contract and for the breach thereof, and for the consequent act of vandalism, the railroad company was liable, and peremptory instruction proper.

But, says appellant, conceding our liability to Mr. Herrin for tearing out the scales, we then say that we are not liable for the value of the scales at the time they were torn out, first because when we tore them out, we took the rails and switches, the only part we could use, and appropriated them to our use; we put the mechanical part of the scale in our freight office; we piled the timbers on our waylands; we threw the brick, mortar and cement out on the side of the pit. Mr. Herrin lived but a few yards from this depot and he made no effort to take this property from our possession. He made no demand upon us to gather up the fragmants, to protect himself. Appellant's idea seems to be that Herrin should have taken a basket and picked up the brick bats and fragments of mortar and cement from appellant's property from the place where appellant had piled it, and disposed of it to his best advantage, giving appellant credit for its value. Next, that he should have demanded of the station agent the mechanical part of the scale, which, in disuse, was of no possible use to Mr. Herrin. That he should have credited them with its value, and then only recover of them, if anything at all, the value of the rails and switches which they had carried away. We have searched in vain for any judicial

authority for such a contention. If mistaken in this, appellant then calls the attention of the court to the fact that upon the occasion of the trial of this cause, which by the way was the second trial (one mistrial having been entered because of the jurors disagreeing) the railroad company loaded the timber and mechanical parts of the scale on a flat car and brought it to Clarksdale and there, during the progress of the trial, in a most dramatic manner, in open court, tendered to Mr. Herrin this fragmentary part of a track scale, and say they, the court erred in not compelling Mr. Herrin to accept this offer and to reduce his claim for the damages *pro tanto.* We are unable to find authority for this most unique proceeding. We are familiar with the rule of law requiring a person sustaining an injury to minimize his damage in every reasonable way. We know that such a person cannot stand still and permit his damage to be increased or aggravated, when by reasonable effort on his part, the aggravation of the injury can be prevented. We know that in some states (not in Mississippi, however), there is what is known as a doctrine of restitution in which one charged with the embezzlement of money may avoid prosecution by repaying the sum embezzled, but we know of no law or rule of law in any state, under which one, who has committed a trespass, taken and destroyed property, taking such parts as were not destroyed into its own possession and then when sued for the value of the property converted, might reduce its liability by coming into the court and there, years after the trespass, offer to restore segregated, fragmentary parts of the property taken, for the purpose of reducing the damage, nor do we understand that it was ever Herrin's duty to undertake, by force or by resort to law, to recover those parts of his property which the railroad company had taken possession of. In support of our contention, we cite 38 Cyc., 1140, from which we quote as follows:

113 Miss.]          Opinion of the court.

"But where property taken is returned, that fact goes in mitigation of actual damages, provided the return is accepted by the plaintiff, and provided also that the return is before the beginning of the action." See also, the authority cited in the note supporting this text.

This, we submit, is the reasonable rule, the fair and the just rule, and is the rule where the defendant offers to restore the property in its original condition and fit for the uses for which it was designed. Certainly then one cannot take the property of another, destroy its usefulness, appropriate part of it to its own use, wreck and destroy his part of it, then tender the remnants in court and claim a deduction in damages. So satisfied are we with the correctness of our contention upon this point that we will not pursue the argument.

Cook, J., delivered the opinion of the court.

In July, 1902, appellant made a contract with appellee, in writing, which contract is in the following words, viz.:

"This agreement made and entered into this tenth day of July, A. D. 1902, by and between the Yazoo & Mississippi Valley Railroad Company, party of the first part, and W. K. Herrin, of Robinsonville, Mississippi, party of the second part, witnesseth: That the party of the first part hereby grant unto the party of the second part license and permission to place a railroad track scale in the track of the party of the first part at Robinsonville, Miss., under and subject to the following conditions and stipulations:

"1. The said track scale shall be constructed at the sole expense of the party of the second part and under the supervision of the roadmaster of the party of the first part and to his satisfaction and at such place as he may direct, and at such time and in such manner as not to interfere with the operation of the railroad of the party of the first part.

"2. The party of the second part hereby agree to per-mit the party of the first part to use the said scale, free of charge, whenever it may desire.

"3. The party of the second part hereby agree to in-demnify the party of the first part for any expense or damage it may incur or suffer, caused by the construc-tion, use or maintenance of the said scale.

"4. The party of the second part hereby agree to take up and remove the said scale within thirty (30) days after being notified in writing by the party of the first part to do so, and if the party of the second part shall fail to comply with such request, the party of the first part shall have the right to take up and remove the said scale at the risk and expense of the party of the second part.

"5. This agreement shall be binding on the heirs, ex-ecutors, administrators and assigns of the party of the second part.

"In testimony whereof, the parties hereto have caused these present to be executed in duplicate the day and year first above written. The Yazoo & Mississippi Val-ley R. R. Co., by J. T. Harahan, Second Vice President. W. K. Herrin. Form Approved B. L."

Shortly after the execution of this contract, in Febru-ary, 1903, Mr. Herrin installed a railroad track scale on the track of the appellant railroad company. The scale was installed under the supervision of the appellant, and the cost of its emplacement amounted to one thousand, nine hundred and ninety-five dollars and thirty-five cents. The scales were thereafter used by the firm of Herrin Bros., of which firm appellee was the senior mem-ber. The business of Herrin Bros. was located at Rob-insonville, in Tunica county, but W. K. Herrin, appellee here and plaintiff below, resided at Clarksdale, in Coaho-ma county. It seems, that after the scales had been erected, Mr. Herrin, for a valuable consideration, as-signed to Abbey & Leatherman, planters and merchants, located at Commerce, a few miles from Robinsonville, a

half interest in the scales. It appears that some time in September or October, 1909, the railroad company decided to remove the scales, and after making some effort to inform Abbey & Leatherman of their purpose, without results, the employees of the railroad removed the scales, over the protest of Mr. Herrin's representative. Mr. Herrin had no personal knowledge of the removal of the scales until after they were removed, or while the removal was going on. This suit was instituted by Mr. Herrin to recover damages for the removal of the scales. We judge from the averments of the declaration and the briefs of counsel that the plaintiff proceeded upon the theory that the railroad company, ''willfully, maliciously, knowingly, intentionally, and with the purpose to oppress and injure the plaintiff and the said uses, with force and arms entered upon the said railroad track scale aforesaid, belonging to said plaintiff aforesaid, . . . and then and there undermined, uprooted, broke to pieces and otherwise destroyed and damaged and converted and disposed of to its own use the said scales,'' etc.

We gather from the evidence that for some months prior to the removal of the scales the scales had not been used by Mr. Herrin to any considerable extent—only a few times at best, either because of a wreck, or derailment, near or on the scales, switching charges; or lack of occasion for using the scales. The precise reason is not clear. Appellee was advised that the appellant was removing the scales from its right of way, and filed a bill in the chancery court, praying for an injunction restraining appellant from removing the scales, but the work was completed before the injunction was served; therefore this suit.

Appellee refused to take possesion of the scales and the material used in its emplacement, but it seems that later a formal tender was made and refused.

To get the right start, it is necessary to understand the contract under which Mr. Herrin installed the scales

on the right of way of the railroad company, a public service corporation. It will be noted that the language employed in the granting clause of the contract defines the thing granted, viz.:

"License and permission to place a railroad track scale in the track of the party of the first part at Robinsonville."

After this follows the conditions imposed upon the grantee in consideration of this "license and permission." The conditions in the first paragraph are that the scale shall be constructed under the supervision of representatives of the grantor and at the sole expense of the grantee. Furthermore, the scales were to be constructed at the time and at the place and in such manner as the grantor deemed best for the free exercise of the grantor's business as a common carrier. Again, the railroad reserved the right to use the scales, free of charge, whenever it desired to do so. Again, the grantee agreed to indemnify the grantor from any expense or damage it might incur or suffer from the construction, use, or maintenance of the scales. Again, the grantee agreed to take up and remove the scale whenever notified; and within thirty days, at his own expense, and, failing to do so, the grantor reserved the right to remove the scale at the expense of the grantee. Lastly, it is provided that the agreement shall be binding on the heirs, executors, administrators, and assigns of the grantee, Mr. Herrin. There is a notable absence of any covenants on the part of the grantor, after granting Mr. Herrin the privilege to construct at his own expense and according to the directions of the railroad company, a track scale. There is not a word in the entire contract fixing the time when the license shall begin or terminate, but Mr. Herrin is required to remove the scales within thirty days after notice to do so—and if he fails to do so, the railroad company expressly reserved the right to remove the scales at Mr. Herrin's expense and risk.

In this case, it appears that the company did not give Mr. Herrin any notice to remove the scales, but undertook the job itself. Not having given the notice, the expense of removing the scales must be borne by the company. We can see nothing in the contract requiring thirty days' notice of the termination of the contract. By its failure to give the notice the expense and risk of the removal was assumed by the company; and, if there was a tortious destruction or injury to the property, that would be a conversion, but detruction or loss will not be regarded as tortious if it was necessary to the protection of the property of the company, or to the safe operation of the road. 38 Cyc., 2017.

Mr. Herrin proceeded upon the idea that the contract conveyed to him at least a thirty days' term; that the company obliged itself to give him thirty days' notice; that he had the right to use the scales for thirty days after notice. If this view of the contract is correct, no matter what may have been the exigencies, the railroad company would be guilty of conversion if it removed the scales without giving the notice.

It seems to us that in interpreting this contract, we must necessarily take into consideration the fact that one of the parties to same was a public service corporation, controlled by duties and obligations which it owed to the entire public. When we do this, we can understand why the contract was a one-sided contract—why all of the conditions were imposed upon Mr. Herrin and none on the common carrier.

Inasmuch as this case was conducted upon the mistaken theory that Mr. Herrin had a term of at least thirty days, and when the railroad company removed his scales without notifying him, they thereby converted his property, there was no serious effort to prove that the property was destroyed or seriously damaged. Mr. Herrin never examined the property after it was removed —he refused to have anything to do with it—he considered the scales as the property of the company. This is

made manifest by the fact that Mr. Herrin resorted to injunction proceedings at once when he was informed that the railroad company was removing the scales. We think the railroad company acted advisedly when it entered into the contract, and, no doubt, carefully refrained from giving Mr. Herrin any fixed term, however short. It realized that something might occur, at any moment, which would render it absolutely necessary to assume undivided control of all of its equipment and right of way. But whether the company was so far-seeing or not, there is nothing in the contract which required the company to terminate the contract by any sort of notice. The company reserved the right to require Mr. Herrin to remove the scales, at his own expense, within thirty days. It did not see fit to avail itself of this right, and therefore it cannot compel Mr. Herrin to pay the cost of removal. .The evidence does not support the theory of conversion, and therefore the judgment of the circuit court will be reversed.

*Reversed and remanded.*

Etheridge, J. (dissenting). I am unable to concur in the opinion or the result reached in this case. This is a suit by the appellee for the conversion of railroad scales installed by the appellee on the side track of appellant under a contract stated in the majority opinion, and the plaintiff was awarded a judgment in the court below for the value of the scales installed under this contract and taken out by the railroad company without notice to the appellee and over his protest, and, after having notice that the plaintiff had applied for and obtained an injunction in the chancery court against its so doing. I deem it unnecessary to set out the contract in this dissenting opinion as it has been set out in the majority opinion, but I desire to refer to clause 4 of this contract, which reads as follows:

"The party of the second part hereby agrees to take up and remove the said scale within thirty (30) days after being notified in writing by the party of the first part to do so, and if the party of the second part shall fail to comply with such request, the party of the first part shall have the right to take up and remove the said scale at the risk and expense of the party of the second part."

Let us examine this clause and see when the right of the railroad company to remove the scales accrued. Under the terms of this clause the party of the second part was to have thirty days after being notified in writing by the party of the first part to do so, and then if the party of the second part, the appellee in this case, had failed to comply with the request, then, and not until then, would the railroad company have the right to remove them at all. This contract was the common contract made by the different railroad companies of the country in conducting its business, and is in aid of its duty as a common carrier. By means of this contract the railroad company gets the scale constructed in its track at the expense of another party, and gets all the benefit of weighing its own cars and freight at such scale as if it were constructed by the company itself. But for this contract, and but for the scales being constructed by the plaintiff, it would have been either the duty of the railroad company to itself construct suitable scales or to move the loaded car from the point in question to some other point for the purpose of being weighed. It is always necessary for the railroad company and shipper each to know what the weight of the shipment is, so that the rate adopted by the company under its tariffs may be applied to the shipment and its freight charges prepaid, or paid without dispute or litigation or vexatious misundertanding and disagreement. A contract of the nature involved here is highly beneficial to both the contracting parties, and it certainly was intended under this contract that it should exist for some time. It might be

a thirty-day period, but it certainly could not be contended, under the contract in question, that the railroad company could have proceeded to remove these scales the day following their construction. The only right that the plaintiff would secure by constructing a pair of expensive scales, costing approximately two thousand dollars, in this case was the right to operate them at least for a period of thirty days, and that they could not be disturbed or interfered with until he had thirty days' notice in which to make his arrangements and take care of his property. The plaintiff in his declaration charges:

"That the railroad company wholly damaged and destroyed and converted and disposed of to its own use plaintiff's scales in question."

The railroad merely filed a plea of the general issue; and the proof that there is no merit in the contention announced by the majority opinion is that the railroad company itself did not present, claim, or insist upon any such theory, but contends for the right to remove the scales without the thirty-day notice upon the theory of a necessity by reason of its being a common carrier, and that there was a defect in the scales dangerous to their operation. There are cases in which this court may rightfully assume that parties have misconceived their, rights under a contract and may proceed properly to declare the law contrary to the theory adopted by the litigants in litigating their differences, but a great railroad company like the appellant, having enormous property interests and doing business in three or more states, and having on its legal staff the most eminent counsel to be found in the land, who certainly are capable of understanding and presenting the rights of the appellant, should cause the court to hesitate long and ponder well before it adopts the theory of the case not contended for, and which is tantamount to exercising a guardianship over the rights of such company, in my opinion. It must be remembered that in dealing with contracts of this kind, and in drafting them, that the company were ad-

visedly inserting a limited period of time in which the right granted could be revoked. If the company intended to reserve the right to revoke at any time, certainly it would have inserted language calculated to convey that meaning to the party with whom it was contracting. The company in this case undertook to show that it gave a notice to another party whom it supposed to have held the right to these scales, but it had a copy of this contract somewhere in its files, and it would have been an easy matter for the company to determine who the proper party was. It certainly made no contract with any one other than the appellee herein, and it never contended, but practically admits throughout the case, both below and here, that the contract could not be terminated under thirty days' notice, except in case of some pressing necessity. In other words, they do not plant themselves at all upon a construction of the contract adopted in the majority opinion. If the construction adopted in the majority opinion be correct, then, in a contract of tenancy at will the landlord could go and dispossess the tenant without any notice whatever, throw his household effects into the street, and, unless some of them were damaged or broken by so doing, he would not be responsible.

I think the present case shows a most deliberate and willful violation of the plaintiff's rights by the appellant; and, while the court below instructed the jury that punitive damages could not be allowed, and that question (in the nature of this appeal) is not involved here, still, I think it was a case for a proper granting of instructions on punitive damages. An attentive examination of the instructions requested by the railroad company appearing in the record will fail to disclose a request for an instruction submitting the theory upon which this case is decided. It is well settled that an unauthorized and unlawful taking charge of a person's property amounts to a conversion. Judge COOLEY, in discussing this ques-

tion in his valuable work on Torts (3d Ed.), vol. 2, p. 859, discusses this subject as follows:

"What Constitutes Conversion.—Any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion. 'The action of trover being founded on a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts, in law, to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is in law a conversion, be it for his own or another person's use.' Warner, J., in *Liptrot* v. *Holmes,* 1 Ga. 381, 391. 'Conversion which will sustain trover must be a destruction of the plaintiff's property, or some unlawful interference with his use, enjoyment, or dominion over it; an appropriation of it by the defendant to his own use, or to the use of a third person, in disregard or defiance of the owner's rights; or a withholding of possession under a claim of title inconsistent with the title of the owner.' *Bolling* v. *Kirby,* 90 Ala. 215, 7 So. 914, 24 Am. St. Rep. 789. While, therefore, it is a conversion where one takes the plaintiff's property and sells or otherwise disposes of it, it is equally a conversion if he takes it for a temporary purpose only, if in disregard of the plaintiff's right. Therefore, if one hire a horse to go to one place, and drive him to another, this is a conversion, though he return him to the owner. 'The word conversion, by a long course of practice, has acquired a technical meaning. It means detaining goods so as to deprive the person entitled to the possession of them of his dominion over them.' Martin, B., in *Burroughes* v. *Bayne,* 5 H. & N. 296, 302. 'Any asportation of a chattel for the use of a defendant or a third person amounts to a conversion, for this simple reason: That it is an act inconsistent

with the general right of dominion which the owner of the chattel has in it, who is entitled to the use of it at all times, and in all places.' *Laverty* v. *Snethen,* 68 N. Y. 522 (23 Am. Rep. 184).''

In 28 Am. & Eng. Enc. Law (2d Ed.), p. 679, the rule is stated as follows:

''It may be stated as a general rule that every act of control or dominion over personal property without the owner's authority, and in disregard and violation of his rights, is, in contemplation of law, a conversion.''

At page 683 of the same work, under the head of ''Effect of Return to, or Subsequent Acquisition of Possession by, Owner,'' the following appears:

''It seems to be well settled that trover for a conversion may be maintained, in case of an unlawful taking or exercise of dominion over the chattels of the plaintiff, though the property may have been returned to the plaintiff and accepted by him prior to the institution of the action, or though he may have reacquired possession by purchase from a third person or by means of an action of replevin.''

In the case of *Johnson* v. *White,* 13 Smedes & M. [Miss.] 584, p. 588, Justice SHARKEY, speaking for this court, used the following language:

''But when goods are tortiously taken, the statute of limitations begins to run from the taking, for the tortious act is of itself a conversion. So an unlawful disposition of property rightfully in possession is a conversion, and the statute begins to run from the time of such disposition. And it is immaterial whether the plaintiff knew of the conversion or not, if no fraud was practised to prevent his knowledge. Angell on Limitations, 327, 328; *Read* v. *Marble,* 3 Johns. [N. Y.] 523.''

It seems to be thoroughly settled, and without dissent so far as I know, that a willful and wrongful taking possession of a person's property is a conversion, and that after taking the property and dealing with it as though it were one's own, a person cannot then tender back the

property and claim that he is only liable for the damage done to the property. Having willfully elected to exercise ownership over the property, he cannot escape the responsibility for the value of the property. In the present case a railroad company sent its crew to take up this scale, without any notice whatever to the owner of the scale. The owner protested vigorously against such wrongful act, went so far as to procure an injunction, which the majority opinion says was not served at the time of the taking of the scale, but which the proof shows that the railroad company, through its agents, had notice that the injunction had been granted, the proof showing that the party in charge, on getting such notice from the owner, went to the agent of the company at the place where the work was being done, and the agent told him he had not received notice, but no inquiry was made by the agent or employee of the road to see whether or not an injunction had in fact been issued. It in fact had been issued, as I understand the record, and, over both protest of the owner and a knowledge of his efforts to protect his rights under this contract, the railroad company proceeded to tear up and throw out of its track the scales of the plaintiff, and to take away a portion of it. I do not think a railroad can take such portion of a scale as it may desire and tender back to the owner the balance. Having taken part of it, I think it was bound for the value of the entire property. The proof in this case abundantly shows that the property was valued at as much as the judgment of the court amounted to, and I see no reason why this judgment should be disturbed. If the construction adopted by the majority becomes the accepted law of this state, then it will be impossible to have those tracks installed. It will impose on a railroad company the duty of installing such scales at many points where it does not now install them at its own expense, and will impose a burden upon the railroad company, and, at the same time, will deprive people of the right and privilege of having scales at small places where

freight may be weighed, so the shipper may see that the weight of the railroad company is correct. It is inconceivable to me that, with the interpretation placed upon this contract by the majority opinion, any person not afflicted with thirty-second degree idiocy or eighteen-carat insane delusions would install, at a great expense, scales in a railroad spur or side track that may be thrown out by the company at will. Necessarily much of the material used in constructing a scale is wasted and destroyed in the removal thereof. The evidence in this case shows that the greater part of expense of installing such scales is lost and destroyed in the removal. The railroad company in this case wins a victory which it will live to regret.